LORELLO, Judge
The State appeals from the district court's orders granting Brian McGraw's and Lacey Killeen's motions to suppress evidence resulting from a search subsequent to a drug-dog sniff conducted during a traffic stop. The State argues that the officers did not abandon the initial purpose of the traffic stop, and therefore the district court erred in granting the suppression motions. For the reasons explained below, we reverse and remand.
I.
FACTUAL AND PROCEDURAL BACKGROUND
While on patrol, a police officer (Officer One) conducted a traffic stop on a car driven by Killeen in which McGraw was a passenger. A second officer (Officer Two), who was close by, heard the stop over dispatch and arrived at the scene shortly after the stop was initiated. During the course of the traffic stop, Officer One questioned both McGraw and Killeen regarding their probation and/or parole statuses, and McGraw answered that he was on parole for delivery of marijuana. After his initial conversation with Killeen and McGraw, Officer One performed his routine functions for a traffic stop including identifying the car's occupants through dispatch, determining whether there were any outstanding warrants, and checking Killeen's driver's license status. Upon receiving returns from dispatch, Officer One asked Killeen to step out of the car and advised her he was going to have his canine sniff the car while he wrote a citation. When Officer One removed Killeen from the car, Officer Two engaged McGraw in conversation and ultimately had him exit the vehicle as well.
*1247 As Officer One was writing the citation, Officer Two volunteered to complete the citation while Officer One deployed his canine. Officer One transferred the citation writing task to Officer Two and retrieved the canine. The canine alerted and, as a result, the officers searched the vehicle. The search produced marijuana, methamphetamine, and drug paraphernalia. Killeen and McGraw were arrested and charged with possession of a controlled substance and possession of paraphernalia. The district court consolidated Killeen's and McGraw's cases.
Killeen and McGraw filed motions to suppress evidence obtained during the search of Killeen's vehicle arguing, in relevant part, that the traffic stop was unlawfully prolonged. The district court granted the motion because Officer One abandoned the original purpose of the stop. The State appeals.
II.
STANDARD OF REVIEW
The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. State v. Atkinson , 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. State v. Valdez-Molina , 127 Idaho 102, 106, 897 P.2d 993, 997 (1995) ; State v. Schevers , 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).
III.
ANALYSIS
Killeen and McGraw filed separate motions to suppress. Killeen's motion asserted there were "numerous acts unrelated to the traffic stop that thereby extended the stop in violation of the constitution." Killeen identified those acts as Officer One's inquiry into Killeen's and McGraw's parole statuses, Officer One explaining he "was going to run a dog around the vehicle" and inquiring whether there was "anything illegal" in the car, and Officer One requesting consent to search. McGraw, on the other hand, requested suppression on the basis that the stop was unlawfully extended when Officer One "directed" Officer Two to issue a citation while Officer One deployed his canine, and on the basis that the stop was pretextual. The district court denied suppression on the grounds that the stop was pretextual, but granted suppression on the basis that Officer One abandoned the original purpose of the stop. With respect to the latter, the district court made the following factual findings and legal conclusion:
There was nothing that I heard from the conversation with Ms. Killeen or Mr. McGraw including his acknowledgment that he was on parole in and of itself that suggests that the stop could be extended based on new reasonable suspicion. It is clear to me given the sequence of events that [Officer One] himself actually did abandon the purpose of the stop when he handed the ticket book off to [Officer Two].
And I appreciate that it took somewhere between two and five seconds to exchange the ticket book, but that act and the act of [Officer Two] then leaving the hood of the car and going into the car to turn the lights off and going around the back of the car to begin writing the citation, and, frankly, while he was moderately engaging Ms. Killeen in an apparent effort to complete the citation, it appeared to me that he was likely covering [Officer One] at the same time. It would be difficult to believe, and I would find it incredible, if he were to have told me that he wasn't paying attention to [Officer One] while ostensibly writing the citation and he wasn't continuously writing the citation from my review of the evidence. So I think that [Officer One], in fact, did abandon that purpose.
....
So I can't find any basis not to regard this as an unlawful extension of the original stop based on [ State v. Linze , 161 Idaho 605, 389 P.3d 150 (2016) ] based on [
*1248 Rodriguez v. United States , --- U.S. ----, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015) ] on which Linze is based. I think that [Officer One] did abandon the original purpose. It was a de minimis violation. But as we know from Linze and Rodriguez , de minimis violations are still violations.
The State argues that the district court erred because the act of exchanging the citation book did not constitute abandonment of the stop, but was the opposite of abandonment. The State further argues that, because the officers "cumulatively continued to diligently pursue the purpose of the stop," there was no Fourth Amendment violation. Killeen and McGraw argue that Officer One's abandonment unreasonably extended the stop because the act of handing the citation book to Officer Two "added time" to the stop. Killeen also argues that Officer Two added time to the stop by not continually writing the citation, and Officer One "deviated from the initial purpose of the stop" by removing Killeen from the vehicle. We conclude that suppression was not proper in this case.
The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." As its text indicates, the " 'touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable.' " State v. Rios , 160 Idaho 262, 264, 371 P.3d 316, 318 (2016) (quoting Florida v. Jimeno , 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) ).
A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. Delaware v. Prouse , 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) ; Atkinson , 128 Idaho at 561, 916 P.2d at 1286. In the context of traffic stops, authority for the seizure ends when the tasks related to the infraction are, or reasonably should have been, completed. Rodriguez v. United States , --- U.S. ----, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015) ; Illinois v. Caballes , 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."). Such tasks include ordinary inquiries incident to the traffic stop such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. Rodriguez , --- U.S. ----, 135 S.Ct. at 1615 ; see also Arizona v. Johnson , 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). An officer may also require the occupants to exit the vehicle during a traffic stop. Maryland v. Wilson , 519 U.S. 408, 412, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). Although a drug-dog sniff cannot fairly be characterized as part of the officer's traffic mission, it is well-established that a drug-dog sniff conducted during a lawful traffic stop is constitutionally permissible if it is executed in a reasonable manner and does not itself infringe upon a constitutionally protected privacy interest. Caballes , 543 U.S. at 409-10, 125 S.Ct. 834. Conversely, a drug-dog sniff conducted after an otherwise-completed traffic stop is unconstitutional absent independent reasonable suspicion for the sniff. Rodriguez , --- U.S. ----, 135 S.Ct. at 1614.
In this case, the district court found that Killeen and McGraw were entitled to suppression because Officer One abandoned the purpose of the traffic stop in order to conduct the dog sniff.[1] The finding that Officer One personally abandoned the purpose of the stop is supported by the evidence presented at the suppression hearing. However, whether *1249 Officer One abandoned the purpose of the traffic stop does not answer the relevant legal question because, as noted, a drug-dog sniff that occurs during a lawful traffic stop is permitted. See Caballes , 543 U.S. at 410, 125 S.Ct. 834 ; State v. Linze , 161 Idaho 605, 609 n.1, 389 P.3d 150, 154 n.1 (2016). The question, instead, is whether the dog sniff occurred during the course of the traffic stop or whether the stop was unlawfully prolonged as a result of the sniff. While it is clear that Officer One was not pursuing the purpose of the traffic stop when he was conducting the dog sniff, it is equally clear that the purpose of the stop was not abandoned because the duties related thereto, which included the issuance of a citation, were transferred from Officer One to Officer Two before the sniff occurred. For this reason, this case is distinguishable from Rodriguez and Linze , upon which the district court relied.
In Rodriguez , an officer conducted a traffic stop after observing a car driving on the shoulder of the road in violation of state law. Rodriguez , --- U.S. ----, 135 S.Ct. at 1612. After the officer issued a written warning, returned the documents to the vehicle's occupants and was denied permission to conduct a dog sniff, the officer ordered the driver to exit his vehicle and wait for a canine officer. Once the canine officer arrived, he performed a dog sniff, and a search was conducted after the dog alerted. "All told, seven or eight minutes had elapsed from the time [the officer] issued the written warning until the dog indicated the presence of drugs." Rodriguez , --- U.S. ----, 135 S.Ct. at 1613. The Supreme Court granted certiorari to decide "whether police may routinely extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." Rodriguez , --- U.S. ----, 135 S.Ct. at 1614 ; see also id . at ----, 135 S.Ct. at 1612 ("This case presents the question whether the Fourth Amendment tolerates a dog sniff conducted after completion of a traffic stop."). The Court framed the "critical question" as "not whether the dog sniff occurs before or after the officer issues a ticket, but whether the sniff adds time to the stop." Id. at ----, 135 S.Ct. at 1616. The Court framed the question this way in response to the government's argument "that by completing all traffic-related tasks expeditiously, an officer can earn bonus time to pursue an unrelated criminal investigation." Id. The Court rejected this argument, explaining that the reasonableness of the seizure "depends on what the police in fact do." Id . Thus, once the purpose of the traffic stop has concluded, the seizure must end, and an officer cannot unreasonably prolong the stop for any reason, including delaying the citation in an effort to extend the stop. But, this does not mean that anything the officers do which is unrelated to the traffic stop and "adds time" to the stop renders the stop unreasonable or unconstitutional. In fact, the Court in Rodriguez reiterated that law enforcement may conduct inquiries unrelated to the traffic stop so long as those inquiries do not measurably extend the duration of the stop, and the Court reiterated the reasonableness requirement of the Fourth Amendment. Id. at ----, 135 S.Ct. at 1614-15.
In Linze , an officer stopped a vehicle for having a cracked windshield and, as he was writing the citation, he paused to call a canine unit. Linze , 161 Idaho at 606, 389 P.3d at 151. When the canine officer arrived, the other officer stopped writing the citation, talked with the canine officer, and performed as backup as the canine officer walked the dog around the vehicle. It took approximately two and one-half minutes longer than it would have to issue the ticket had the officer not paused to assist in the drug-dog sniff. The Idaho Supreme Court applied Rodriguez and held that, by delaying the traffic stop for two and one-half minutes while performing a backup function for a drug-dog sniff, the officer committed a Fourth Amendment violation. Linze , 161 Idaho at 609, 389 P.3d at 154.
Unlike Rodriguez , the dog sniff in this case did not occur after the traffic stop was complete; it occurred during the traffic stop. Thus, the dog sniff did not "add time" to the stop in the way the dog sniff did in Rodriguez . And, unlike Linze , the stop in this case was not suspended while the dog sniff occurred, so it did not add time to the stop in the way the sniff did in Linze . Because of the factual differences, Rodriguez and Linze are *1250 distinguishable. If anything, footnote 1 from Linze supports our conclusion that suppression is unwarranted on these facts. As our Supreme Court noted in Linze , the "adds time to" framework from Rodriguez is intended to "allow for dog sniffs that do not add time to the stop (i.e., dog sniffs in which one officer continues to pursue the original objectives of the stop while a second officer conducts a dog sniff)." Linze , 161 Idaho at 609 n.1, 389 P.3d at 154 n.1. That is exactly what happened in this case-Officer Two continued to pursue the original objectives of the stop while Officer One conducted the dog sniff. The district court's findings that Officer Two was "likely covering" Officer One "at the same time" Officer Two was completing the citation and Officer Two did not appear to be "continuously writing the citation" also do not compel the legal conclusion that the stop was constitutionally unreasonable. We see no principled basis for holding, as a matter of Fourth Amendment law, that the dog sniff would pass constitutional muster if only Officer One would have continued writing the citation instead of transferring that task to Officer Two. We also see no principled basis for holding that the Fourth Amendment precludes one officer from pursuing the purpose of a stop while providing cover to another officer on-scene or for holding that the Fourth Amendment requires an officer to "continuously" write a citation without ever pausing for any reason. If anything, United States Supreme Court cases recognizing that inquiries unrelated to the purpose of the stop do not convert the stop into an unlawful detention so long as those inquiries do not measurably extend the duration of the stop support the opposite conclusion. See, e.g. , Johnson , 555 U.S. at 333, 129 S.Ct. 781. Counting every pause taken while writing a citation as conduct that unlawfully adds time to the stop is inimical to the Fourth Amendment's reasonableness requirement and is contrary to United States Supreme Court precedent.
Our conclusion, that no Fourth Amendment violation occurred, comports with Rodriguez and Linze and gives meaning to the Fourth Amendment's reasonableness requirement. Because the drug-dog sniff in this case did not violate the Fourth Amendment, the district court erred in granting Killeen's and McGraw's motions to suppress and in dismissing their cases on that basis.
IV.
CONCLUSION
Because the drug-dog sniff in this case was conducted during the course of a lawful traffic stop, there was no Fourth Amendment violation. Thus, Killeen and McGraw were not entitled to suppression of the evidence discovered as a result of the search that occurred following the positive dog alert. Accordingly, we reverse the district court's orders granting McGraw's and Killeen's motions to suppress and remand this case for further proceedings consistent with this opinion.
Chief Judge GRATTON concurs.

Our review is limited to the district court's factual findings and its legal conclusion that Officer One abandoned the purpose of the traffic stop. See Atkinson , 128 Idaho at 561, 916 P.2d at 1286 (standard of review of a decision on a motion to suppress requires deference to factual findings supported by the evidence and de novo review of the law as applied to those facts).