IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 45792

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: August 28, 2019 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) |
| JESSE RAY STILL, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Barbara A. Buchanan, District Judge.

Order denying motion to suppress, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant. Kimberly A. Coster argued.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent. Ted S. Tollefson argued.

---

GRATTON, Chief Judge

Jesse Ray Still appeals from his judgment of conviction and sentence for unlawful possession of a firearm by a felon. Still argues that the district court erred in denying his motion to suppress. For the reasons set forth below, we affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Still was charged with unlawful possession of a firearm by a felon and unlawful possession of methamphetamine. The charges arose after two police officers, Officer Clark and Officer Kingery, stopped Still's vehicle for a traffic violation. Officer Clark was the driver of the patrol car and Officer Kingery was the passenger. Officer Clark approached the driver's side of the vehicle and made contact with Still. Officer Clark informed Still that he was stopped for speeding and an expired license. Officer Clark asked Still for his driver's license, registration,

1

and proof of insurance. Still handed Officer Clark his driver's license and began searching through his vehicle to retrieve the remaining items. As Still was searching for the items, Officer Clark called a drug-dog officer (Officer Inman) using his on-body radio. Officer Clark stated: "SP39, you and your partner want to head my way, if you are available?" Thereafter, Still provided Officer Clark with the remaining documents. Officer Clark questioned Still about the vehicle's registration and asked Still if there were any weapons or drugs in the vehicle. Still denied possessing either.

Next, Officer Clark and Officer Kingery returned to the patrol vehicle to run Still's license and registration. After reaching the patrol vehicle, Officer Clark sat down in the driver's seat, picked up the in-car radio, and called Officer Inman for a second time. Officer Clark stated, "SP 39?, [this is] SP 30," "Are you and your partner available?" The district court found that "When [Officer] Clark began making the second call, [Officer] Kingery was entering the passenger's side door. By the time the call had concluded, [Officer] Kingery was seated, and the passenger's side door was closed." The second call to Officer Inman took approximately ten seconds. Thereafter, Officer Clark placed Still's driver's license on the in-car computer and began processing and obtaining information. Officer Clark completed a citation for speeding and began filling out a warning for Still's expired registration. At that time, Officer Inman arrived at the scene and deployed his drug dog. The dog alerted on the vehicle and a subsequent search revealed the presence of a firearm and methamphetamine. Consequently, the State charged Still with unlawful possession of a firearm by a felon and unlawful possession of methamphetamine.

Still filed a motion to suppress the evidence found in his vehicle. The district court held a hearing on the motion to suppress. At the hearing and in his brief in support of the motion, Still argued that pursuant to *Rodriguez v. United States*, __ U.S. __, 135 S. Ct. 1609 (2015) and *State v. Linze*, 161 Idaho 605, 389 P.3d 150 (2016), the traffic stop was unlawfully prolonged when Officer Clark radioed to Officer Inman a second time. In response, the State argued that the Idaho Supreme Court did not intend for *Linze* to apply to the facts of this case and Officer Clark did not abandon or deviate from the purpose of his stop.

The only evidence presented at the motion to suppress hearing was testimony from Officer Clark and a video of Officer Clark's body camera. During his testimony, Officer Clark stated that he made the second call to Officer Inman because the officers were having issues with their on-body radios. He stated,

2

We had been having radio issues, and we still are, to where essentially we'll try to radio one party and they'll reply, but we won't get the reply.

So I remember now when I had requested it the first time, I didn't hear anything back. So that's why the second request was--and our in-car radios, they're a different brand--so our in-car radios, they actually don't miss transmissions ever, where our portables are the ones that we have been having issues with.

In addition, Officer Clark acknowledged that the first thing he did when he got into the vehicle was call Officer Inman and "at that exact moment" he was not doing anything else. Ultimately, the district court denied Still's motion to suppress concluding that,

the few seconds Clark used to make the call did not prolong the stop because during that time Kingery was entering the vehicle, being seated, and as the call concluded, both officers began working as a unit to run and review the status of Still's license and registration.

Subsequently, Still agreed to enter a conditional guilty plea to felon in possession of a firearm, Idaho Code § 18-3316(1), reserving his right to appeal the district court's denial of his motion to suppress. In exchange for Still's guilty plea, the State agreed to dismiss the remaining charge. The district court sentenced Still to a term of four years with two years determinate and retained jurisdiction. Still timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

3

## III.

## ANALYSIS

Still argues that his traffic stop was unlawfully extended in violation of the Fourth Amendment when Officer Clark radioed to Officer Inman a second time.[1]

The Fourth Amendment of the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." As the text indicates, the "'touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable.'" *State v. Rios*, 160 Idaho 262, 264, 371 P.3d 316, 318 (2016) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)).

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999).

In the context of traffic stops, authority for the seizure ends when the tasks related to the infraction are, or reasonably should have been, completed. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Such tasks include ordinary inquiries incident to the traffic stop such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Rodriguez v. United States*, __ U.S. __, __, 135 S. Ct. 1609, 1615 (2015); *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009). An officer may also require the occupants to exit the vehicle during a traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 412 (1997). Although a drug-dog sniff cannot fairly be characterized as part of the officer's traffic mission, it is well-established that a drug-dog sniff

---

[1] The constitutionality of the initial radio call to Officer Inman is not challenged on appeal. Thus, we will only address Still's challenge regarding the second radio call.

conducted during a lawful traffic stop is constitutionally permissible if it is executed in a reasonable manner and does not itself infringe upon a constitutionally protected privacy interest. *Caballes*, 543 U.S. at 409-10. Conversely, a drug-dog sniff conducted after an otherwise-completed traffic stop is unconstitutional absent independent reasonable suspicion for the sniff. *Rodriguez*, __ U.S. at __, 135 S. Ct. at 1614.

Still asserts that the United States Supreme Court holding in *Rodriguez* and the Idaho Supreme Court holding in *Linze* dictate that, although the radio call was for a period of only ten seconds, it constituted an abandonment of the traffic mission because it was unrelated to the purpose of the stop and "added time" to Still's detention making it an unreasonable seizure under the Fourth Amendment. In response, the State argues that the district court did not err because the officers did not abandon the purpose of the traffic stop. We agree with the State.

It is important to examine the context in which *Rodriguez* and *Linze* were decided. Prior to *Rodriguez*, the United States Supreme Court held that a "dog sniff conducted during a lawful traffic stop" does not violate the Fourth Amendment as long as the sniff does not result in the stop being "prolonged beyond the time reasonably required to complete" its traffic based mission. *Caballes*, 543 U.S. at 407. Following *Caballes*, lower courts disagreed over whether a *de minimus* extension of a traffic stop to allow time for a dog sniff would pass constitutional muster. The United States Supreme Court addressed this question in *Rodriguez*, __ U.S. at __ , 135 S. Ct. at 1609.

In *Rodriguez*, an officer engaged in a lawful traffic stop, issued the driver a warning citation, required the driver to wait approximately "seven to eight" minutes for a second officer to arrive, and then engaged in a drug-dog sniff. *Id.* at __, 135 S. Ct. at 1613. The dog alerted on the vehicle and the subsequent search revealed methamphetamine. *Id*. The United States Supreme Court granted certiorari and framed the issue as, "whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, to conduct a dog sniff." *Id*. at __, 135 S. Ct. at 1614. Although the Court framed the issue narrowly, the *Rodriguez* Court stated that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission--to address the traffic violation that warranted the stop, and to attend to related safety concerns." *Id.* (internal quotations omitted). The Court found that, beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to the traffic stop" but does not include "on-scene investigation into other crimes" aimed

5

at "detecting evidence of ordinary criminal wrongdoing." *Id*. at __, 135 S. Ct. at 1615-16 (explaining that typical inquiries include investigation into the driver's license, the automobile's registration and proof of insurance and possible warrants because those investigations relate to "roadway safety" but does not include drug-dog sniffs because those investigations are aimed at "detecting evidence of ordinary criminal wrongdoing").

In addition, *Rodriguez* acknowledged the danger to police officers inherent in traffic stops, and found no constitutional injury where an officer takes "negligibly burdensome precautions in order to complete his [traffic] mission safely." *Id*. at ___, 135 S. Ct. at 1616. However, "safety precautions taken in order to facilitate" investigation of other crimes are not justified as part of a routine traffic stop. *Id.* Finally, the Court found that "An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. . . . But he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.*

In 2016, the Idaho Supreme Court applied the *Rodriguez* decision in *Linze*. In *Linze*, an officer initiated a lawful traffic stop on a vehicle after observing that the vehicle had a cracked windshield. After initiating warrant checks, the officer paused to call a drug-dog unit. *Linze*, 161 Idaho at 606, 389 P.3d at 151. When the drug-dog officer arrived, the other officer stopped writing the citation, spoke with the drug-dog officer, and served as backup while the drug-dog officer walked the dog around the vehicle. It took approximately two and one-half minutes longer than it would have to issue the ticket had the officer not paused to assist in the drug-dog sniff. The Court explained:

> The stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop, to which that reasonable suspicion is related. However, should the officer abandon the purpose of the stop, the officer no longer has that original reasonable suspicion supporting his actions. Indeed, when an officer abandons his or her original purpose, the officer has for all intents and purposes initiated a new seizure with a new purpose; one which requires its own reasonableness under the Fourth Amendment.
> . . . .
> The United States Supreme Court's intention in *Rodriguez* is thus made clear. The rule isn't concerned with when the officer deviates from the original purpose of the traffic stop, it is concerned with the fact that the officer deviates from the original purpose of the stop at all.

*Linze*, 161 Idaho at 609, 389 P.3d at 154. The Idaho Supreme Court reiterated that the "United States Supreme Court's underlying conclusion" is that "an officer always has to be reasonably

diligent" and held that by delaying the traffic stop for two and one-half minutes while performing a backup function for a drug-dog sniff, the officer committed a Fourth Amendment violation. *Id*.

The Court's concern in *Rodriguez*, which was echoed in *Linze*, was with officers prolonging an individual's detention in order to engage in on-scene investigations, or to take safety precautions in order to facilitate such investigations, that are unsupported by reasonable suspicion. Based on that concern, the Court explained that certain inquiries, or investigations, are permitted because they are related to roadway safety and are thus a part of the traffic mission. However, a drug dog sniff may constitute an abandonment of the traffic mission because it is aimed at investigating evidence of ordinary criminal wrongdoing. Therefore, based on the context and the language of *Rodriguez* and *Linze*, an abandonment occurs when officers deviate from the purpose of the traffic mission in order to investigate, or engage in safety measures aimed at investigating crimes unrelated to roadway safety for which the officers lack reasonable suspicion.

Turning to the case at hand, the pertinent findings are as follows: Officer Clark engaged in a lawful traffic stop, and while acquiring Still's documentation, radioed to request a drug-dog unit. After not receiving a response to his initial radio call, Officer Clark walked back to his patrol vehicle, sat down, and took ten seconds to make a second radio call to a drug-dog officer. Based on those facts, Still contends that the officer's second phone call to inquire if a drug-dog unit was available constitutes a *Rodriguez* abandonment. Thus, the sole question before this Court is whether a radio call to inquire if a drug-dog unit is available constitutes an abandonment of the traffic mission so as to amount to an unlawful extension of Still's traffic stop.

We conclude that a radio call to inquire if a drug dog is available does not constitute a *Rodriguez* abandonment. For that reason, this case is distinguishable from *Rodriguez* and *Linze*.

Officer Clark did not abandon the purpose of the traffic stop to engage in a separate criminal investigation. Unlike Officer Clark's radio call, abandonment occurred in *Rodriguez* and *Linze* when officers converted the traffic stops into drug investigations by engaging in drug-dog sniffs unsupported by reasonable suspicion. Unlike the defendants in *Rodriguez* and *Linze* who challenged the officers' conduct in relation to the drug-dog sniff, Still challenges the radio call to the drug-dog officer. However, *Rodriguez* does not prohibit all conduct that in any way slows the officer from completing the stop as fast as humanly possible. It prohibits abandoning

7

the stop to investigate other crimes.[2] The *Rodriguez* Court took issue with the investigation (i.e. the drug-dog sniff) itself. *See Rodriguez*, __ U.S. __, 135 S. Ct 1609. Here, Officer Clark was not conducting a drug-dog sniff, taking safety measures aimed at conducting a drug-dog sniff, or engaging in any other alternate investigation. At most, a radio call to inquire if a drug-dog unit is available is a precursor to an alternate investigation. Although the call may (or may not) result in an alternate investigation which may or may not pass constitutional muster, the call itself does not amount to a Fourth Amendment violation.

We cannot conclude that any pause during a traffic stop requires a conclusion under *Rodriguez* and *Linze* that the officers abandoned the purpose of the traffic stop. In fact, such a conclusion is inimical to the Fourth Amendment's reasonableness requirement and is contrary to United States Supreme Court precedent. Our conclusion, that no Fourth Amendment violation occurred, comports with *Rodriguez*, *Linze*, and this Court's previous precedent, and gives meaning to the Fourth Amendment's reasonableness requirement.[3] Accordingly, the district court did not err in denying Still's motion to suppress.

## IV.

## CONCLUSION

The district court did not err in denying Still's motion to suppress because his detention was not unlawfully extended. Therefore, the district court's order denying Still's motion to suppress is affirmed.

Judge LORELLO and Judge BRAILSFORD CONCUR.

---

[2]     *See United States v. Campbell*, 912 F.3d 1340, 1353 (11th Cir. 2019).

[3]     Our decisions in *State v. Renteria*, 163 Idaho 545, 415 P.3d 954 (Ct. App. 2018) and *State v. McGraw*, 163 Idaho 736, 418 P.3d 1245 (Ct. App. 2018) are consistent with our holding today. Like this case, both of those cases presented us with challenges to the constitutionality of an officer's radio request for a drug-dog unit. However, in *Renteria* and *McGraw*, the radio calls were made while officers were simultaneously engaging in activity directly related to the traffic stop. Therefore, neither of those calls added time to the traffic stop. Here, we are confronted with a situation in which nothing but the ten-second call is occurring and therefore must squarely address the constitutionality of Officer Clark's radio call to inquire if a drug-dog unit is available.