## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 46886

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: May 20, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) |
| FREDERICK JEREMIAH JACOBSEN, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael J. Reardon, District Judge.

Order denying motion to suppress, reversed; judgment of conviction for possession of methamphetamine, vacated and case remanded.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Frederick Jeremiah Jacobsen appeals from the district court's judgment of conviction for possession of methamphetamine. He argues that the district court erred in denying his motion to suppress. For the reasons set for below, we reverse.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Jacobsen was charged with possession of methamphetamine, Idaho Code § 37-2732(c). The charges arose after Officer Mikowski stopped a vehicle driven by Jacobsen because the rear license plate was improperly mounted and the registration sticker was not visible. Upon approaching the vehicle, Officer Mikowski spoke with Jacobsen and his passenger, Chris Roest. The officer requested Jacobsen's insurance, driver's license, and registration. In addition, the officer asked Roest for identification. After admitting that he did not have a valid driver's

1

license, Jacobsen provided Officer Mikowski with an identification card and Roest gave the officer a suspended license.

Officer Mikowski returned to his vehicle to run a records check on Jacobsen and Roest. After spending four and one-half minutes in the patrol car, the officer returned to Jacobsen's vehicle to see if Jacobsen had located his registration or proof of insurance. Jacobsen explained that he had just purchased the vehicle, did not have insurance or a valid registration, and that he may be able to locate a bill of sale from the previous owner. While Roest looked through the glove box for documentation, Officer Mikowski asked Jacobsen and Roest various questions. Roest informed the officer that he was out on bail and was previously arrested for drug paraphernalia. Thereafter, Officer Mikowski walked back to his patrol car and while walking, he requested the assistance of a canine unit.

Upon returning to the patrol car, Officer Mikowski began processing the citations. While Officer Mikowski was processing the citations, the canine officer, Deputy Kindelberger, arrived. Deputy Kindelberger approached the passenger side window of Officer Mikowski's patrol car; Officer Mikowski turned off the audio on his on-body camera, and the two had a conversation that lasted seventeen seconds. Thereafter, Officer Mikowski finished writing the citations. During this time, Deputy Kindelberger separately removed each occupant from the vehicle, patted them down for weapons, and questioned them regarding drug use. After Officer Mikowski printed the citations and while the deputy was questioning Roest, Officer Mikowski stepped out of his vehicle and directed Jacobsen to sit on the curb near his patrol car. The officer briefly spoke with Jacobsen, approached Roest, and requested that he sit next to Jacobsen on the curb. Subsequently, although there is not an audio recording of the conversation, the video evidence shows that Officer Mikowski stood next to and spoke with Roest. As he was doing so, Deputy Kindelberger retrieved his canine and walked behind Jacobsen and Roest, who were still seated on the curb. Deputy Kindelberger began the dog sniff and the canine alerted on Jacobsen's vehicle. Subsequently, Officer Mikowski turned the audio on his on-body camera on and is heard having a casual conversation with Roest. Ultimately, the search of Jacobsen's vehicle and person revealed methamphetamine.

As a result of the encounter, the State charged Jacobsen with possession of methamphetamine. Jacobsen filed a motion to suppress. As pertinent to this appeal, Jacobsen argued that his traffic stop was unconstitutionally prolonged. After a hearing on the motion and

2

additional briefing by the parties, the district court ultimately denied Jacobsen's motion to suppress. Consequently, Jacobsen entered a conditional guilty plea to possession of methamphetamine. He reserved his right to appeal the district court's denial of his motion to suppress. The district court sentenced him to a unified term of five years with two years determinate and retained jurisdiction. Jacobsen timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Jacobsen argues that the district court erred in denying his motion to suppress because his traffic stop was unlawfully prolonged.

The Fourth Amendment of the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." As the text indicates, the "touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *State v. Rios*, 160 Idaho 262, 264, 371 P.3d 316, 318 (2016) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)).

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. In the context of traffic stops, authority for the seizure ends when the tasks related to the infraction are, or reasonably should have been, completed. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015); *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in

3

issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."). Such tasks include ordinary inquiries incident to the traffic stop such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Rodriguez*, 575 U.S. at 355; *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). An officer may also require the occupants to exit the vehicle during a traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 412 (1997).

Jacobsen argues that Officer Mikowski abandoned the purpose of the traffic stop and the abandonment added time to his stop on three occasions: (1) when Officer Mikowski stopped writing the citation to speak with Deputy Kindelberger for seventeen seconds; (2) when Officer Mikowski separately moved Jacobsen and Roest and instructed them to sit on the curb; and (3) when Officer Mikowski engaged in a casual conversation with Roest while waiting for the drug dog sniff to occur. In response to these contentions, the State argues: (1) Officer Mikowski's seventeen-second conversation with Deputy Kindelberger was justified by officer safety; (2) moving Jacobsen and Roest was appropriate because the officer needed to control the scene; and (3) engaging in casual conversation with Roest is permitted. We agree with Jacobsen.

We conclude that Officer Mikowski abandoned the purpose of the traffic stop when he spoke with Deputy Kindelberger, separately moved and seated Jacobsen and Roest on the curb, and had a casual conversation with Roest in order to facilitate a drug dog sniff unsupported by reasonable suspicion. This Court recently explained that, pursuant to *Rodriguez*, "an abandonment occurs when officers deviate from the purpose of the traffic mission in order to investigate, or engage in safety measures aimed at investigating crimes unrelated to roadway safety for which the officers lack reasonable suspicion." *State v. Still*, 166 Idaho 351, 356, 458 P.3d 220, 225 (Ct. App. 2019).

First, Officer Mikowski abandoned the traffic mission when he stopped processing the citation to have a discussion with Deputy Kindelberger. At the motion to suppress hearing, Officer Mikowski testified that he had all the information necessary to complete his citation and was not waiting to hear back from dispatch when Deputy Kindelberger approached the passenger

4

side window and the pair engaged in a seventeen-second conversation. During that time, Officer Mikowski deviated from the purpose of his traffic mission. It is unknown what the two were discussing because Mikowski deactivated the audio on his on-body camera. However, Officer Mikowski admitted that his conversation with Deputy Kindelberger was for officer safety "just so that [Deputy Kindelberger] was not walking into a blind situation." Officer Mikowski's deviation was aimed at taking safety precautions to facilitate the drug-dog sniff and it added time to Jacobsen's stop.

Second, Officer Mikowski abandoned the traffic mission when he took time to separately move Jacobsen and Roest to the curb in order to facilitate the dog sniff. The district court concluded that this action, as well as the casual conversation with Roest, was justified because:

> Given the complex nature of the stop: with Defendant's lack of a driver's license; the convoluted ownership history of the vehicle; that the vehicle was registered in the passenger's name; that Defendant had no insurance; that Mr. Roest had a suspended driver's license; the fact that neither Defendant nor Mr. Roest would have been allowed to drive the truck away after the citation was given; and that Officer Mikowski would have needed to explain both the citation process and the options for Defendant and Mr. Roest regarding transportation following the conclusion of the traffic stop, the Court cannot find that the time required to reasonably address the purpose of the traffic stop would have expired prior the Officer Kindelberger's canine alerting on Defendant's truck.

We acknowledge that there were complexities involved with the stop, including multiple people and the need to discuss transportation. Officer Mikowski testified that he intended to discuss the citation and how the stop would end. However he also testified as follows:

> Q. Did moving the passenger away from that vehicle have anything to do with safety during the canine sniff?
> A. Yes. Generally you don't let subjects just mingle around the car as another officer or another canine officer is doing his thing around the car.

Thus, Officer Mikowski testified that he moved the pair away from Jacobsen's vehicle, at least in part, to facilitate the drug-dog sweep. "[S]afety precautions taken in order to facilitate" investigation of other crimes, outside of the traffic mission, are not justified as part of a routine traffic stop. *Rodriguez*, 575 U.S. at 356. This deviation, like the conversation with Deputy Kindelberger, was aimed at taking safety precautions to facilitate the dog sniff and it added time to Jacobsen's stop.

5

Third, Officer Mikowski abandoned the traffic mission when he took forty-three seconds to casually converse with Roest, instead of addressing Jacobsen and concluding the traffic stop, while Deputy Kindelberger engaged in the drug-dog sweep. The district court found:

> Based on the video evidence, it appears that there was only forty-three (43) seconds between the time at which Officer Mikowski could have begun to explain the citation after having both Defendant and Mr. Roest seated on the curb, [] and the point at which [Deputy] Kindelberger's canine alerted on Defendant's vehicle [].

Based on this finding, and the findings set forth above, the court concluded that Officer Mikowski's casual conversation with Roest did not prolong the stop. We disagree. Although Officer Mikowski *could have* been talking to Roest about the traffic citation, there is no evidence to show that Officer Mikowski was actually pursuing the traffic mission. The evidence shows that Officer Mikowski seated Jacobsen on the curb, spoke with Jacobsen for a moment, and then seated Roest on the curb next to Jacobsen. Thereafter, Officer Mikowski engaged in a conversation with Roest. The video evidence shows Deputy Kindelberger walk behind the three of them while Officer Mikowski and Roest converse. It is unknown what the two are discussing because Officer Mikowski still had the audio deactivated on his on-body camera. Thereafter, the deputy began the dog sweep and the canine alerted on the vehicle. After the canine alerted, Officer Mikowski re-activated the audio on his on-body camera. When he does so, he is heard having a casual conversation with Roest about the marks on Roest's face and Roest's prior experience with law enforcement. When questioned at the suppression hearing, Officer Mikowski admitted that he had "no purpose" in bringing Roest into the conversation and that it "effectively delayed [the] stop." There is nothing to suggest that Officer Mikowski *actually* processed the citation because the audio was turned off; he did not engage in conversation with Jacobsen; and he never handed Jacobsen the citation. Because there is no evidence to suggest otherwise, we cannot say that Officer Mikowski was advancing the purpose of the traffic stop rather than waiting for the drug dog to alert. Accordingly, the district court erred in denying Jacobsen's motion to suppress.

## IV.

## CONCLUSION

Because Jacobsen's traffic stop was unlawfully prolonged, the district court erred in denying Jacobsen's motion to suppress. Therefore, the district court's order denying Jacobsen's

motion to suppress is reversed; the judgment of conviction for possession of methamphetamine is vacated; and the case remanded.

Chief Judge HUSKEY and Judge BRAILSFORD **CONCUR**.