IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 47372

| STATE OF IDAHO, | ) | |
| --- | --- | --- |
| | ) | Filed: February 9, 2021 |
| Plaintiff-Appellant, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| SUNNY DAWN RILEY, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jonathan Medema, District Judge.

Order granting motion to suppress, reversed and case remanded.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for appellant.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for respondent.

———————————————————

BRAILSFORD, Judge

The State appeals from the district court's order granting Sunny Dawn Riley's motion to suppress. We reverse and remand.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of January 13, 2019, Officer Kingland stopped Riley for driving a vehicle with an expired registration. During this traffic stop, a drug dog alerted on Riley's vehicle and officers discovered a baggie of methamphetamine and drug paraphernalia in the vehicle. As a result, the State charged Riley with possession of methamphetamine and possession of drug paraphernalia, Idaho Code §§ 37-2732(c)(1), 37-2734A(1).

Riley moved to suppress the evidence seized during the traffic stop. At the evidentiary hearing on the motion, Officer Kingland and Officer Lane, the drug dog's handler, testified.

1

Also, the parties stipulated to the admission of the videos from the body cameras of all four of the officers present on the scene during the traffic stop. Following the hearing, the district court issued a written decision including the following factual findings pertinent to this appeal.

When Officer Kingland made contact with Riley, she told him she did not have a valid driver's license or proof of insurance. To prove her identity, Riley provided a dental insurance card. At that point, Officer Kingland took a pen and notepad from his pocket and wrote down Riley's name and birthdate, and then put the pen and notepad back into his pocket. After putting his pen into his pocket, Officer Kingland asked Riley, "All right, nothing illegal in the car I need to worry about?" to which Riley responded, "no," and "No marijuana, drug pipes, anything crazy like that?" to which Riley again responded, "no." The district court found that this exchange took approximately eight seconds and was unrelated to the traffic stop and that Officer Kingland "was not simultaneously completing some other task related to the traffic stop" when asking these questions.

The district court also made findings regarding Officer Kingland's conversations with the backup officers called to the scene, Officers Miles and Ellison. After returning to his patrol car to write citations, Officer Kingland called for backup based on his belief that Riley "had been using drugs" or "had hidden some in her car." The court found that, when the backup officers arrived, Officer Kingland "stopped doing activities related to the traffic stop," i.e., writing citations, "to explain to the other officers who had arrived on the scene that he wanted them to try to talk their way into being able to search [Riley's] car and why he wanted them to do that." The court found that these conversations were "not related to the traffic stop" and were "not contained on any of the videos" and that the court could "only guess" at their length.

Finally, the district court found the traffic stop did not conclude until after the drug dog alerted on Riley's vehicle. Specifically, the court found "the mission of the traffic stop [was] completed (or abandoned) 48 seconds after the dog alerts."[1] Based on this finding, the court reasoned the appropriate inquiry was "Did [Officer Kingland's] conversation with the other officers take longer than 40 seconds? If so, then that conversation, along with his [eight-second]

---

[1]    In its written decision, the district court inconsistently refers to the traffic stop as both "completed" and "abandoned." The court's reference to Officer Kingland abandoning the traffic stop apparently relates to his testimony that he intended to write Riley three citations but only wrote two citations before the drug dog alerted when he "stopped what [he] was doing to go complete a search of the vehicle."

2

questions about illegal items, extended the duration of [Riley's] seizure." The court, however, concluded it could not "determine if those conversations 'measurably extended' the duration of [Riley's] seizure" and that, as a result, the State failed to meet its burden of showing the seizure was reasonable.

The State timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The State argues the district court erred by granting Riley's motion to suppress based on erroneous factual findings and incorrect conclusions that Officer Kingland unlawfully prolonged the traffic stop. The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." As the text indicates, the "touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *State v. Rios*, 160 Idaho 262, 264, 371 P.3d 316, 318 (2016) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)).

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic

3

laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the traffic stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). In the context of traffic stops, authority for the seizure ends when the tasks related to the infraction are, or reasonably should have been, completed. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Such tasks include ordinary inquiries incident to the traffic stop such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Rodriguez v. United States*, 575 U.S. 348, 355 (2015); *see also Arizona* v. *Johnson*, 555 U.S. 323, 333 (2009).

An officer's inquiries into matters unrelated to the justification for the traffic stop do not convert that stop into an unlawful seizure in violation of the Fourth Amendment "so long as those inquiries do not measurably extend the duration of the stop." *Johnson*, 555 U.S. at 333; *see also State v. Renteria*, 163 Idaho 545, 549, 415 P.3d 954, 958 (Ct. App. 2018) (ruling questions about drugs and weapons in vehicle did not prolong stop because defendant was still searching for proof of insurance when officer posed questions). Similarly, a drug-dog sniff conducted during a lawful traffic stop does not violate the Fourth Amendment, *Caballes*, 543 U.S. at 409-10, so long as the sniff does not prolong the traffic stop longer than "the time needed to handle the matter for which the traffic stop was made." *Rodriguez*, 575 U.S. at 350. "This rule is both broad and inflexible. It applies to all extensions of traffic stops including those that could reasonably be considered *de minimis*." *State v. Linze*, 161 Idaho 605, 608, 389 P.3d 150, 153 (2016). The critical question is not whether the dog sniff occurs before or after the officer issues a citation but whether conducting the sniff prolongs, i.e., adds time, to the traffic stop. *Rodriguez*, 575 U.S. at 357; *see also State v. Pylican*, ___ Idaho ___, ___, 477 P.3d 180, 190 (2020) (noting "neither *Rodriguez* nor *Linze* apply to dog sniffs that do not extend the duration of the stop").

A traffic stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop to which the reasonable suspicion relates. *Linze*, 161 Idaho at 609, 389 P.3d at 154. If an officer abandons the purpose of the traffic stop, however, he initiates a new seizure requiring independent reasonable suspicion for that seizure. *Id.* (holding officer abandoned traffic stop by performing back-up function for drug-dog sweep for two and one-half minutes).

4

The new seizure cannot "piggy-back" on the reasonable suspicion for the original traffic stop. *Id.* An officer does not abandon a traffic stop and initiate a new seizure if his activity unrelated to the traffic stop occurs concurrently with his activity related to pursuing the traffic stop. *See Renteria*, 163 Idaho at 549, 415 P.3d at 958 (ruling officer's questions about illegal items, asked while defendant searched for proof of insurance, and discussion with another officer about possible drug activity while waiting for response from dispatch did not prolong stop); *State v. Parkinson*, 135 Idaho 357, 362-63, 17 P.3d 301, 306-07 (Ct. App. 2000) (noting officer's questions about drugs while another officer wrote traffic citation did not prolong stop).

In this case, the State argues the district court made a clearly erroneous factual finding that "it could 'only guess' how long the conversation between Officers Kingland and Miles lasted." According to the State, the "videos plainly show that the officer conversation at issue could only be one thing: the approximately 20-second conversation that is seen on Officer Miles's on-body video." Further, the State argues the court erred by concluding Officer Kingland unlawfully prolonged the stop by "having a 20-second conversation with Officer Miles" and by asking Riley eight seconds of questions about possessing illegal items. The State contends that "neither action impermissibly extended or abandoned the traffic stop."

## A. The District Court's Factual Finding That the Videos Do Not Show the Length of Officer Kingland's Conversations Is Clearly Erroneous

As an initial matter, we consider whether the district court clearly erred by finding Officer Kingland's conversations "with the two responding assist officers"[2] "were not captured in any of the videos"; the "evidence regarding the length of the conversation between the officers . . . is not contained on any of the videos"; and "it could 'only guess' how long the conversation between Officers Kingland and Miles lasted." While we disagree with the State's assertion that the conversation at issue is an approximately 20-second conversation between Officers Kingland and Miles, we agree the district court's finding that Officer Kingland's "conversations were not captured in any of the videos" is clearly erroneous. A careful review of the videos from Officer Kingland's and Officer Miles's body cameras shows Officer Kingland

---

[2] Both counsel at the evidentiary hearing and the district court in its written decision imprecisely and inconsistently refer to a single conversation between Officer Kingland and Officers Miles and Ellison and also to multiple conversations. Meanwhile, Officer Kingland testified about a conversation with Officer Miles and a conversation with Officer Ellison.

5

had two conversations, and the length of each of those conversations can be determined by viewing the videos.

As the district court noted, all four videos admitted in evidence are synchronized and display the exact same timestamp.[3] These timestamps allow the videos to be compared to determine what is occurring on different videos at precisely the same time. A comparison of the videos of Officer Kingland and Officer Miles in this manner clearly shows a conversation occurred between Officer Kingland and Officer Miles immediately after Officers Miles and Ellison arrived on the scene. After Officer Kingland obtains Riley's information and returns to his patrol car, his video shows him writing a citation until 4:01:28 when his video becomes obscured. At precisely that same moment on Officer Miles's video, Officer Kingland can be seen through his passenger window as Officer Miles approaches Officer Kingland's car. At that moment, Officer Miles's video captures Officer Kingland leaning forward into his steering wheel (thereby obscuring his video) while looking at and verbally addressing Officer Miles.

Officer Miles's video then shows only the side of Officer Kingland's car. At 4:01:39, however, Officer Miles's video shows Officer Miles walking away from Officer Kingland's car toward Riley's vehicle, and a second later at 4:01:40, Officer Kingland's video also captures a view--through his front windshield--of Officer Miles walking away from Officer Kingland's car toward Riley's vehicle. These views clearly show a conversation occurred between Officers Kingland and Miles and lasted approximately 12 seconds from 4:01:28 until 4:01:40.

Further review of Officer Kingland's video shows he later had another conversation with an unidentified individual while still in his patrol car. After Officer Kingland's conversation with Officer Miles, Officer Kingland resumes writing a citation. A couple of minutes later, however, at 4:03:59, he lifts his pen from his citation notebook and begins gesturing with his writing hand in a manner clearly showing he is having a conversation with someone. At 4:04:25, Officer Kingland's pen returns to his citation notebook, and he begins writing again. This second conversation during which Officer Kingland can be seen conversationally gesturing

---

[3] The district court notes the officers' body cameras are synchronized according to Coordinated Universal Time and do not reflect the local time when Officer Kingland stopped Riley shortly before 9 p.m. in Boise.

lasted approximately 26 seconds from 4:03:59 until 4:04:25.[4]   Other than these two conversations, Officer Kingland's video shows he was diligently and continuously writing citations in his patrol car until the drug dog alerted.

Contrary to the district court's finding, a review of Officer Kingland's and Officer Miles's videos plainly show Officer Kingland had an approximate 12-second conversation with Officer Miles and another approximately 26-second conversation with someone else--totaling approximately 38 seconds.  Accordingly, we hold that the court erroneously found that Officer Kingland's conversations were not captured on the videos and that the length of those conversations could not be determined.  Further, we hold that the court erred by concluding the State failed to meet its burden of proof to establish the length of these conversations.

**B.    The District Court Erred by Concluding Officer Kingland Unlawfully Prolonged the Traffic Stop**

Next, we consider whether the district court erred by concluding Officer Kingland's 8-second inquiry about illegal items and his two conversations totaling 38 seconds unlawfully prolonged the traffic stop.  Officer Kingland's video includes audio of his 8-second questioning of Riley about illegal items.  None of the videos, however, include audio of Officer Kingland's two conversations with others; the officers' body-camera audio are muted during those conversations.  Given the absence of audio, the exact nature of the conversations cannot be determined.  Conceivably, one or both may have related to the traffic stop in progress, to the impending drug-dog sniff, or to some other subject.[5]  Accordingly, for purposes of considering whether these conversations unlawfully prolonged the traffic stop, we assume--without deciding--that they were unrelated to and deviated from the traffic stop.  *See State v. Still*, 166

---

[4]    With whom Officer Kingland had this second conversation is unclear.  Conceivably, the conversation may have been with dispatch or it may have been with Officer Ellison.  Although Officer Ellison arrived on the scene with and at the same time as Officer Miles, Officer Ellison did not turn on his body camera until he approached Riley's vehicle at 4:05:02.  As a result, any conversation Officer Ellison may have had with Officer Kingland from 4:03:59 until 4:04:25 would not have been captured on Officer Ellison's video.

[5]    Regarding his conversations with Officers Miles and Ellison, Officer Kingland testified that he asked "Officer Miles to go speak with the driver and gave [sic] consent to search the vehicle"; "it's important to inform my approaching officers for officer safety purposes what's going on and what they're walking into and not walk into there blindly"; and that he told "them" of his concerns about Riley's potential drug use.

7

Idaho 351, 356, 458 P.3d 220, 225 (Ct. App. 2019) (ruling officer deviates from purpose of traffic stop when investigating or engaging in safety measures aimed at investigating crimes unrelated to traffic stop).

Regardless, only the length of those conversations is at issue on appeal. This narrow review, which is particular to this case, is premised on the district court's underlying analysis and Riley's adoption of that analysis on appeal. In analyzing whether Officer Kingland unlawfully prolonged the traffic stop, the court found Officer Kingland completed or abandoned the traffic stop 48 seconds after the drug dog alerted on Riley's vehicle. Based on this finding, the court reasoned that Officer Kingland unlawfully prolonged the traffic stop *only if* his 8-second questions to Riley about possessing illegal items and his conversations with backup officers spanned more than 48 seconds. On appeal, Riley expressly concedes the "critical question" is whether Officer Kingland's conversation with Officers Miles and Ellison "lasted more than 40 seconds" and if so, then this length of time in addition to "the 8-second delay attributable" to Officer Kingland's questions about illegal items unlawfully prolonged the traffic stop.[6] Under this analysis, Officer Kingland's conversations only spanned 38 seconds, and thus we hold that they did not unlawfully prolong the traffic stop.

Likewise, we hold that Officer Kingland's 8-second inquiry about illegal items did not unlawfully prolong the traffic stop either. In support of the district court's erroneous conclusion to the contrary, the court found that Officer Kingland's questions about illegal items were "clearly unrelated to the traffic stop" and that Officer Kingland "was not simultaneously completing some other task related to the traffic stop." In making this latter finding, the court rejected the State's argument that the 8-second questioning did not prolong the stop because Officer Kingland was putting away his notepad during this questioning. Challenging Officer Kingland's use of his notepad, the district court found that Officer Kingland wrote Riley's "name and date of birth" on his notepad; the video clearly shows he "never uses the information he wrote on the pad"; "there was no evidence it was necessary for the officer to put his pad away

---

[6]     *Rodriguez* and *Pylican* offer some support for the validity of this analysis despite that no evidence supports the conclusion Officer Kingland's conversations specifically related to an effort to initiate a drug dog sniff. *See, e.g.*, *Rodriguez v. United States*, 575 U.S. 348, 357 (2015) (ruling critical question is whether the dog sniff prolongs, i.e., adds time, to traffic stop); *State v. Pylican*, ___ Idaho ___, ___, 477 P.3d 180, 190 (2020) (noting "neither *Rodriguez* nor *Linze* apply to dog sniffs that do not extend the duration of the stop").

8

before he walked back to his car"; and "the officer could simply have turned and walked back to his car without putting his notepad away."

We disagree with the district court that when Officer Kingland was questioning Riley about her possession of illegal items he "was not simultaneously completing" a task related to the traffic stop and that use of a notepad during the traffic stop somehow unlawfully prolonged the stop. "This Court has expressly rejected the argument that an officer conducting a routine traffic stop may not ask questions unrelated to the purpose of the stop even if the questioning does not extend the normal length of the stop." *Renteria*, 163 Idaho at 548, 415 P.3d at 957 (ruling questions about drugs or weapons in vehicle while defendant searching for proof of insurance did not extend stop); *see also Still*, 166 Idaho at 356, 458 P.3d at 225 (concluding radio call for drug-dog availability does not constitute abandonment of purpose of traffic stop). Regardless of whether Officer Kingland actually "used" the information written in his notepad, his use of a notepad during the traffic stop was objectively reasonable--particularly because Riley could not produce a driver's license. Additionally, Officer Kingland's return of his notepad to his pocket while continuing to converse with Riley and before returning to his patrol car was reasonable, and neither this conduct nor his questioning about illegal items unlawfully prolonged the traffic stop.

This Court has previously expressed that "counting every pause taken while writing a citation as conduct that unlawfully adds time to a stop is inimical to the Fourth Amendment's reasonableness requirement." *State v. McGraw*, 163 Idaho 736, 741, 418 P.3d 1245, 1250 (Ct. App. 2018). Likewise, scrutinizing every move of an officer's routine conduct during a traffic stop--like using a pen and notepad to write down a driver's information when she cannot produce a driver's license--is also inimical to the Fourth Amendment. The touchstone of the Fourth Amendment still remains reasonableness. *Rios*, 160 Idaho at 264, 371 P.3d at 318.

## IV.

## CONCLUSION

The district court's finding that the videos did not show Officer Kingland's conversations is clearly erroneous. A careful review of the videos from the body cameras of Officer Kingland and Officer Miles shows Officer Kingland's conversations with others and their length. For this reason, the court erred by concluding the State failed to meet its burden of proof that the conversations did not unlawfully prolong the stop. Further, the district court erred by concluding

9

Officer Kingland's 8-second questioning about illegal items unlawfully prolonged the traffic stop. Neither Officer Kingland's two conversations with others, totaling approximately 38 seconds, nor his 8-second questioning about illegal items unlawfully prolonged the traffic stop in violation of Riley's Fourth Amendment rights against unreasonable searches and seizures. Accordingly, we reverse the court's order granting Riley's motion to suppress and remand this case for further proceedings consistent with this opinion.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.