**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 36818**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, November 2010 Term |
| | ) | |
| v. | ) | 2011 Opinion No. 2 |
| | ) | |
| ROBERT W. SKURLOCK, | ) | Filed: January 5, 2011 |
| | ) | |
| Defendant-Appellant. | ) | Stephen W. Kenyon, Clerk |
| _____ | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. The Honorable Steven C. Verby, District Judge.

The order of the district court is <u>affirmed</u>.

Molly Huskey, State Appellate Public Defender, Boise, for appellant. Justin M. Curtis argued.

Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent. Nicole L. Schafer argued.

_____

J. JONES, Justice.

Robert W. Skurlock appeals the district court's order denying his motion to suppress. We affirm.

## I.
## Factual and Procedural Background

At approximately 6:00 or 6:01 p.m. on February 27, 2009, the Sandpoint Police Department conducted a search of the motel room where Robert W. Skurlock was residing. The search was conducted pursuant to a "daytime" search warrant. Based on evidence obtained during the search, Skurlock was charged with possession of marijuana with intent to deliver.

Skurlock subsequently filed a motion to suppress, arguing that the search was illegal because the warrant was not executed during daytime hours. At the suppression hearing, Skurlock presented evidence that the sun set at 5:28 p.m. on the date the warrant was executed.

1

While there was conflicting testimony presented at the hearing regarding the precise time the warrant was executed at Skurlock's motel room, the district court specifically found the warrant was executed at 6:00 or 6:01 p.m. The State presented testimony from two members of law enforcement who were present at the motel during the execution of the search warrant. Both officers testified that they had no problem seeing during the execution of the warrant and they could observe other individuals present at the scene without the aid of a flashlight.

In ruling on Skurlock's motion, the district court relied on the Idaho Court of Appeals' decision in *State v. Burnside*, wherein the court defines "daytime" as the period from "dawn to darkness where darkness is the point at which insufficient natural light exists with which to distinguish another's features." 113 Idaho 65, 69, 741 P.2d 352, 356 (1987). The district court ultimately denied Skurlock's motion, concluding that at the time the search of Skurlock's motel room began, there was sufficient natural daylight with which to clearly identify individuals without the aid of artificial light.

Skurlock subsequently entered a conditional plea of guilty, preserving the right to appeal the district court's denial of his motion to suppress. The district court sentenced Skurlock to a unified sentence of two years, with one year fixed, and retained jurisdiction, but stayed the sentence pending the appeal to this Court.

## II.
## Issue on Appeal

I.  Whether this Court should follow *State v. Burnside* or adopt an alternative rule for determining when daytime ends for the purposes of executing daytime search warrants.

## III.
## Discussion

### A.  Standard of Review

When this Court reviews a district court's order granting or denying a motion to suppress evidence, the standard of review is bifurcated. *State v. Watts,* 142 Idaho 230, 232, 127 P.3d 133, 135 (2005). The Court will accept the trial court's findings of fact unless they are clearly erroneous, but may freely review the trial court's application of constitutional principles in light of the facts found. *State v. Diaz,* 144 Idaho 300, 302, 160 P.3d 739, 741 (2007).

### B.  Definition of Daytime

Pursuant to Idaho Code section 19-4411 dealing with search warrants,

2

[t]he magistrate must insert a direction in the warrant that it be served in the day time unless the affidavits are positive that the property is on the person or in the place to be searched, in which case he may insert a direction that it be served at any time of the day or night.

I.C. § 19-4411. Similarly, Idaho Criminal Rule 41(c) specifies that search warrants "shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime." I.C.R. 41(c). The rationale behind the requirement that warrants be executed during the daytime is that nighttime searches inflict a greater invasion of privacy than daytime searches. *State v. Lindner*, 100 Idaho 37, 42, 592 P.2d 852, 857 (1979). In *Lindner*, this Court noted:

[s]earches of private dwellings executed during the nighttime take on additional constitutional significance. The fourth amendment protects individual privacy, and entry into an occupied dwelling in the middle of the night is clearly a greater invasion of privacy than entry executed during the daytime. A knock at the door is more alarming in the middle of the night, and it is no less so because the officer knocking has a search warrant.

*Id*. (citations omitted). Another rationale underlying the daytime warrant requirement is police safety. Executing a warrant during nighttime hours increases the likelihood of violence because nighttime searches cause an abrupt intrusion on sleeping occupants in a home, thus increasing the potential for a violent reaction from the occupants. *See State v. Lewis*, 106 Idaho 800, 802, 683 P.2d 448, 450 (Ct. App. 1984), *overruled on other grounds by State v. Lewis*, 107 Idaho 616, 691 P.2d 1231 (1984).

Neither Idaho Code section 19-4411 nor Rule 41(c) contains a definition of the term "daytime," but according to the Idaho Court of Appeals, "daytime extends from dawn to darkness where darkness is the point at which insufficient natural light exists with which to distinguish another's features." *Burnside*, 113 Idaho at 69, 741 P.2d at 356. In reaching this conclusion, the court stated, "[t]he natural light of day may extend visibility beyond a locality's official sunset. Where one's features are clearly discernible by natural light alone, even after official sunset, we cannot say that daytime has ceased." *Id*. *Burnside* is the only case in Idaho addressing the definition of "daytime" as used in the context of daytime search warrants, and this Court has never addressed the issue.

On appeal, Skurlock does not challenge any of the district court's factual findings or argue that the district court erred in its application of *Burnside* to the facts of this case. Instead, Skurlock urges this Court to overrule *Burnside* because the analysis articulated by the Court of

Appeals "leads to inconsistent results, is difficult to employ, and is not consistent with Idaho statutory law." Skurlock encourages this Court to adopt the bright-line standard articulated by the Utah Court of Appeals in *State v. Simmons*, 866 P.2d 614, 618 (Utah Ct. App. 1993), which prohibits daytime warrants from being served one-half hour after sunset to one-half hour before sunrise. The State, on the other hand, argues that this Court should follow the rule from *Burnside* because Skurlock has not articulated any reasonable basis for overruling the established precedent. The State further argues that the rule from *Burnside* is consistent with the rationale underlying the requirement that warrants be executed during the daytime.

While we acknowledge the *Burnside* definition is not ideal,[1] neither is the approach adopted by the Utah Court of Appeals. Even though the approach adopted by the Court of Appeals in *Burnside* is not binding on this Court, it was the law relied upon by law enforcement at the time the warrant was executed at Skurlock's motel room. Skurlock has failed to present an argument against the *Burnside* approach that would be of avail to him on appeal. He has neither argued that the *Burnside* definition is violative of the Constitution nor has he demonstrated how the evidence could be excluded even if the district court misconstrued or misapplied Idaho Code section 19-4411. Therefore, we affirm.

**IV.**
**Conclusion**

Because Skurlock does not challenge any of the district court's factual findings or assert that the court erred in its application of *Burnside* to the facts of this case, we affirm the district

---

[1] It is apparent that there are several difficulties associated with applying the *Burnside* definition of daytime. For example, in any given case, it is likely difficult to discern whether natural light alone was sufficient to identify another's features, or alternatively, whether visibility was due to a combination of natural light and artificial light. Such difficulty is highlighted in this case, as the testimony from the suppression hearing indicates law enforcement struggled to determine whether their ability to see another's features was a result of the natural light left over from the day, or a result of the artificial light coming from the streetlights and exterior lights of the motel. Another problem associated with applying the *Burnside* definition of daytime is that the time of sunset varies considerably depending upon season and location and, thus, the permissible time period for executing a daytime search warrant will also vary considerably. Such a result is inconsistent with the policy underlying the daytime warrant requirement because it may prohibit the execution of daytime search warrants when privacy concerns are not present. To deal with these problems, many jurisdictions have adopted a bright-line standard that sets forth specific hours during which a daytime search warrant may be executed regardless of season or location. For example, Federal Rule of Criminal Procedure 41(a)(2)(B) defines daytime as the "hours between 6:00 a.m. and 10:00 p.m. according to local time." While we recognize the advantages of an alternative rule, such as the federal rule, we decline to adopt a rule in a case that is before the Court for decision. Rather, this matter would be more appropriately addressed through an amendment to the Idaho Criminal Rules, after interested parties have provided input through the proper rule-making process.

court's decision to deny Skurlock's motion to suppress.


Chief Justice EISMANN, and Justices BURDICK, and HORTON CONCUR.


W. JONES, concurring:

I concur with the majority's Opinion affirming the decision of the district court, but I disagree with the basis on which the Majority does so. Decisions of the Court of Appeals are not binding on this Court and, therefore, it is unnecessary to overrule *State v. Burnside*, 113 Idaho 65, 741 P.2d 352 (Ct. App. 1987). Instead, the standard used there should be abolished and this Court should adopt a new standard for the definition of "daytime" for the purpose of executing a daytime-only search warrant.

The Majority notes the obvious deficiencies in the *Burnside* definition of daytime in footnote 1. The Majority recognizes that "it is likely difficult to discern whether natural light alone was sufficient to identify another's features, or alternatively, whether visibility was due to a combination of natural light and artificial light." Such difficulties can lead to conflicting testimony whether another person's features could or could not be determined by natural light alone. Often in the situation of executing a search warrant, there might well be a combination of some natural light as well as artificial light, such as street lights, lights from adjoining windows or lights at doors or businesses in the vicinity. *See Atlanta Enters. v. Crawford*, 22 F.2d 834, 837 (N.D. Ga. 1927) (noting that whether there was sufficient daylight for a warrant executed in a theater on a lighted street was a matter of speculation). Indeed, another person's features might be distinguishable with the aid of moonlight alone on a clear, full-moon evening, at least from a short distance. The *Burnside* standard also has no defining factors, such as whether it requires the ability to discern another person's features from a literal face-to-face confrontation or to distinguish another person's features from 100 yards away. It also says nothing about the eyesight of the person seeking to determine the other person's features. With the same lighting conditions, some people might be able to distinguish another person's features from 100 yards while persons with weaker eyesight might not be able to do so from 10 feet away. In short, the *Burnside* standard is really no standard at all. It leaves police and courts without any significant guidance when a daytime search warrant can be served. It also leads to court action to resolve conflicting testimony as to the lighting conditions and who could see what from where.

5

The foundation of the daytime-only search warrant is for the protection of persons at a time of day or night when they have a heightened expectation of privacy that should not be disturbed by a knock on the door and the presentation of a search warrant. There can be no serious dispute that when persons have retired for the evening they have a greater expectation of privacy that should not be disturbed until normal activities resume in the morning. For that reason, I believe this Court should adopt a bright-line test, such as Federal Rule of Criminal Procedure 41(a)(2)(B), which defines daytime as the "hours between 6:00 A.M. and 10:00 P.M. according to local time."

There are a number of advantages to adopting a time-based standard such as the federal rule. Americans today do not structure their daily routines according to how much daylight is available. They most often prepare for work, socialize, and pursue leisure activities according to the clock, not according to the sun. Because we now expect similar amounts of privacy at a given time of the day regardless of what month it is, adopting the federal rule would ensure that the police execute warrants within the same hours, even on the summer or the winter solstices. The rule would provide a bright line that all the State's magistrates can easily and uniformly apply.

I recognize that there are, for instance, many people who work the midnight shift and might well be sleeping at a time of full daylight. I also realize that such a rule could be adopted by amendment to the Idaho Criminal Rules, but I do not see an overwhelming need to do so when the matter can simply be handled by departing from the *Burnside* standard and adopting a new definition of daytime. If the standard is to be changed, whether it be by court rule or decision, it will be this Court that will do it. I believe it should be done now.

Although I would adopt a new standard, I nevertheless agree with the decision to affirm the district court because the police officers in the present case complied with the *Burnside* standard which was the law in effect at the time of this particular search. The new standard I propose would be effective only after the date of the Court's decision.