# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49087

| | | | |
|---|---|---|---|
| STATE OF IDAHO, | ) | | |
| | ) | | |
| Plaintiff-Appellant, | ) | Boise, January 2022 Term | |
| | ) | | |
| v. | ) | Opinion filed: June 10, 2022 | |
| | ) | | |
| SUNNY DAWN RILEY, | ) | Melanie Gagnepain, Clerk | |
| | ) | | |
| Defendant-Respondent. | ) | | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Jonathan Medema, District Judge.

The judgment of the district court is <u>reversed and remanded</u>.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Appellant. Kale Gans argued.

Eric Don Fredericksen, Idaho State Appellate Public Defender, Boise, for Respondent. Andrea Reynolds argued.

_____

MOELLER, Justice.

This case presents another Fourth Amendment issue related to deviations from the initial purpose of a traffic stop and whether the deviations unconstitutionally prolonged the stop. The State appeals the district court's order granting Sunny Riley's motion to suppress evidence obtained when a drug dog alerted on her vehicle while she was being cited for a traffic offense. Riley's motion was granted by the district court after it concluded that the police officer's deviations from the traffic stop measurably and unlawfully extended the duration of Riley's seizure under the Fourth Amendment. For the following reasons, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At 8:55 PM on January 12, 2019, a Boise Police officer initiated a traffic stop on a vehicle with expired registration tags. The driver was Sunny Dawn Riley. During the stop, other officers and a K-9 unit arrived as backup on the scene because Officer Kingland believed there may have been drug involvement or contraband hidden within Riley's vehicle. During the traffic stop,

1

Officer Kingland spent some time asking Riley whether she had contraband in the vehicle, which she denied, and then spent additional time discussing the situation with backup officers as they arrived on the scene. These conversations deviated from the initial purpose of the traffic stop, and their timing is the key issue on appeal. The district court found that these deviations measurably extended the stop beyond Fourth Amendment reasonableness.

The key evidence in this case comes from the body camera footage of the four officers on the scene during the traffic stop: Officers Kingland, Miles, Ellison, and Lane. While the timing of the conversations and events is disputed by the parties, the district court determined that the "videos speak for themselves."

On initiating the traffic stop at 8:55 PM (3:55:15 on the video's timestamp),[1] Officer Kingland exited his patrol car and approached the driver's side of Riley's vehicle to ask for her driver's license. Lacking one, she instead provided a dental insurance card as a form of identification. Riley also told Kingland that her license was expired, she was still paying fines on a prior traffic infraction, and that she had no car insurance. Officer Kingland then pulled out a notepad and pen to record more information. He asked Riley her name, date of birth, whether she was on probation, and other questions relating to Riley's identity, in addition to questions about her expired driver's license and registration tags. Immediately after putting his pen and notepad away, at 03:58:35 on the time stamp, Kingland then asked Riley if there were any controlled substances in the vehicle:

> Officer Kingland:  All right, nothing illegal in the car I need to worry about?
> Riley: No.
> Officer Kingland: No marijuana, drug pipes, anything crazy like that?
> Riley: No.

Following Riley's answers, the time stamp read 03:58:43. The district court later found that this line of questioning took 8 seconds and was not done simultaneously with another task related to the traffic stop. The time stamp readings bear this out. Kingland then talked with Riley about the need for driver's insurance and that he was going back to his vehicle to write up "a couple citations." Kingland then returned to his vehicle and began writing up Riley's citations for "no

---

[1] As the district court noted in its order, the timestamps on the police videos are in Coordinated Universal Time (UTC), also known as "Zulu" time or the time at the Zero Meridian. It is a time standard similar to Greenwich Mean Time (GMT)—the time in Greenwich, England at the Prime Meridian. These synchronized UTC timestamps in the body-camera videos, adjusted to local time, show Riley was pulled over at 8:55 PM, the drug dog alerted at 9:09 PM, and Kingland completed writing the traffic citation at 9:10 PM.

proof of insurance" and for having an invalid license. From that point, Kingland's body camera footage has no audio.

While Kingland was in his patrol vehicle writing the citation, Officers Miles and Ellison arrived on the scene at 9:01 PM, with the timestamp reading 04:01:20. Officer Miles approached Kingland's vehicle on the passenger side. While the sound is off on each body camera, Kingland's face can briefly be seen turning towards the approaching Officer Miles at the timestamp 04:01:27. The camera view is then obstructed until 04:01:39 when Officer Miles leaves the side of Officer Kingsland's vehicle and begins to approach Riley's car. The sound turns on at 04:01:40 when Officer Miles is walking towards Riley's vehicle. There is no conversation taking place when the sound turns on. Likewise, on Officer Kingland's video, there is a brief period where his camera is obstructed, likely as he is leaning forward, from 04:01:27 to 04:01:40. The subject of the conversation was later determined to be two-fold: (1) Kingland gave Miles a summary of the situation for the incoming backup officers' safety, and (2) Kingland gave instructions to Miles that he should talk with Riley and try to get consent to search her vehicle. The district court found that this conversation was immeasurable.

As Officer Kingland continued to work on the citations, Officer Miles approached Riley's car and explained to Riley that Officer Kingland was concerned about potential contraband in the vehicle. Officer Miles began to ask Riley questions about her current citations and the circumstances of the traffic stop. He also asked Riley whether the officers could search her vehicle. She did not consent to a search and expressed anxiety at these new requests. At 04:05:20, Officer Miles told Riley that a drug dog was on the way and would circle her vehicle once during the traffic stop to check for scents of contraband. He asked her to step out of the vehicle while this occurred. Officer Miles added that Riley was not in trouble and that the officers would not search her car.

At 9:09 PM, Officer Lane arrived on the scene with his drug dog. Officer Lane had been called to the scene by Officer Miles. On his arrival, Officer Lane promptly led the dog to Riley's car and circled the vehicle once. At approximately 04:09:52 on the video (still 9:09 PM), the drug dog alerted on the passenger side of the vehicle.

Officer Kingland's video ends at 04:10:40 (which is 9:10 PM), when he appears to finish writing up Riley's citations. Eight seconds later, at 04:10:48, Officer Lane tells Officer Kingland, still in his vehicle, that the drug dog alerted on Riley's car. At the same time as this conversation

3

occurs between Officers Lane and Kingland, Officer Ellison approached Officer Kingland's vehicle and stood with his arm on the door through the open window of the passenger side. Officer Ellison then goes to tell Officer Miles, who was with Riley, that "there was a hit" on the vehicle.

As Officer Miles begins to explain to Riley that the drug dog alerted on her vehicle, Officer Lane approaches them to tell Riley that his dog alerted to the odor of narcotics at the passenger door. Another officer simultaneously begins to search Riley's vehicle in the background. The officers ultimately found a plastic baggie of methamphetamine and two "snort straws with suspected methamphetamine residue." They then arrested Riley on charges of possession of a controlled substance and possession of drug paraphernalia.

Following her arrest and arraignment, Riley moved to suppress the seized evidence. She argued that her constitutional rights had been violated when Officer Kingland extended the scope and duration of the traffic stop. The district court held a hearing on Riley's motion to suppress on June 17, 2019. Both Officers Kingland and Lane testified at this hearing. The State and Riley also stipulated to the admission of the four police body-camera videos as evidence.

Officer Kingland testified that he never delayed the traffic stop. He explained: "I didn't think that there was a dog on, so I wasn't taking any special time to try and delay . . . as the dog had not even been called to the stop." He said he stopped writing the citations momentarily to talk with Officer Miles "for officer safety purposes" to update the backup officers on the situation upon their arrival. He noted the conversation was "brief." Officer Lane also testified that his dog alerted on Riley's vehicle at 9:09 PM.

In reviewing the evidence, the district court determined that there were two conversations at issue between the parties that resulted in deviations from the traffic stop. The first was the 8-second conversation between Officer Kingland and Riley when he asked her about potential contraband in her vehicle. The second conversation was between Officers Kingland and Miles after Officers Miles and Ellison arrived on the scene. Because the dog alerted at 04:09:52 and Officer Kingland finished writing Riley's citations at 4:10:40, the district court concluded that the traffic stop's mission was either completed or abandoned "48 seconds after the dog alerts." Thus, the 8-second conversation between Officer Kingland and Riley "did not extend the duration of her detention." However, the district court also concluded that the conversation between Officer Kingland and the incoming backup officers was immeasurable—that the court "can only guess" as to its length much less conclude whether it took less than "40 seconds." Thus, the district court

4

stated that combined, these two conversations constituted deviations from the traffic stop that impermissibly lengthened the seizure and violated Riley's Fourth Amendment rights:

> The court finds the officer who stopped Ms. Riley deviated from the mission of the traffic stop when he asked her questions about illegal items in her vehicle and when he explained to other officers his desire that the other officers find some way to search her car for drugs and why he wanted them to do that. From the evidence presented, *the court cannot determine if those conversations "measurably extended" the duration of Ms. Riley's seizure*. Because they might have, the court finds the State has failed to meet its burden of showing her seizure was a reasonable one under the 4th Amendment.

(Emphasis added). The district court then granted Riley's motion to suppress.

The State timely filed its appeal and the case proceeded to the Idaho Court of Appeals, which reversed the district court's order.[2] Riley then timely petitioned this Court for review.

## II. STANDARD OF REVIEW

In reviewing a trial court's order on a motion to suppress evidence, the standard of review is bifurcated. *State v. Skurlock*, 150 Idaho 404, 405, 247 P.3d 631, 632 (2011). The Court accepts the trial court's factual findings "unless they are clearly erroneous," but freely reviews the "application of constitutional principles in light of the facts found." *Id.*

This "deference to the trial court's factual findings reflects 'the trial court's special role to weigh conflicting evidence and judge the credibility of witnesses.' " *State v. Andersen*, 164 Idaho 309, 312, 429 P.3d 850, 853 (2018) (quoting *Hull v. Giesler*, 163 Idaho 247, 250, 409 P.3d 827, 830 (2018)). However, in the unusual circumstance when the Court "has exactly the same evidence before it as was considered by the district court," such as with videos, the Court can freely review that evidence and weigh it in the same manner as the trial court would do. *Id.*

Furthermore, when we "review[] a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019) (quoting *State v. Schmierer*, 159 Idaho 768, 770, 367 P.3d 163, 165 (2016)).

## III. ANALYSIS

The primary issue on appeal is whether the district court erred in granting Riley's motion to suppress the evidence seized at her traffic stop. There are two questions within this inquiry that will be addressed below: (A) whether the district court erroneously concluded the length of the

---

[2] *State v. Riley*, No. 47372, 2021 WL 454250 (Idaho Ct. App. Feb. 9, 2021).

officers' conversation could not be determined from the evidence; and (B) whether the district court then erred in concluding Officer Kingland unlawfully extended the traffic stop. Importantly, our recent decision in *State v. Karst*, -- Idaho --, -- P.3d -- (2022), was not yet available to the district court or the Court of Appeals when they reached their decisions.

**A. The district court erroneously concluded that the length of the officers' conversation could not be determined from the videos.**

In granting Riley's motion to suppress, the district court found two conversations to be deviations from the traffic stop: the first was an 8-second conversation between Officer Kingland and Riley when he questioned her about whether there were controlled substances hidden in the vehicle. The second was a conversation between Officers Kingland and Miles when backup officers arrived on scene, which the district court concluded was both immeasurable and unrelated to the traffic stop. Riley contends these findings are correct. She argues that the length of the conversation cannot be measured where the videos include no image or sound of the conversation and when, at the hearing, Kingland could only remember that the conversation at issue was "brief." The State argues that the district court erroneously found that the second conversation's length could not be determined from the evidence.[3] We agree with the State that the district court's decision was clear error.

On reviewing the evidence, the district court agreed with the State that the dog alerted on Riley's vehicle at 04:09:52, which was 48 seconds *before* Kingland finished writing the citations at 04:10:40. In other words, because reasonable suspicion of a new crime—drug possession— arose when the dog alerted 48 seconds before the original traffic stop was completed, the district court was attempting to determine whether the two conversations deviating from the traffic stop unlawfully prolonged the stop by 48 seconds or more. Officer Kingland's questioning of Riley lasted 8 seconds, so the key and narrow inquiry became whether the conversation between Officers Kingland and Miles lasted longer than 40 seconds.

While Riley and the district court are correct that the precise length of the conversation is difficult to ascertain, the State is also correct that it cannot have lasted beyond 20 seconds. Admittedly, there is no sound on the body cameras to indicate the beginning, end, or subject matter of the conversation at issue. Likewise, the only video images during this timeframe show either a

---

[3] For purposes of this appeal, we will defer to the district court's finding that the second conversation was unrelated to the original purpose of the traffic stop. The State has not disputed this finding on appeal.

6

dark, obstructed view (Officer Kingland's camera) or the ground next to the police vehicle (Officer Miles's camera). A plain review of the audio and video recordings reveals that the conversation lasted a maximum of 20 seconds, and may have been shorter. Officers Miles and Ellison exited their vehicle at the scene at 04:01:20. Officer Kingland was writing Riley's citations until his camera becomes obstructed at 04:01:27. While neither Officers Miles nor Kingland's cameras depict their conversation because their sound remained off, Officer Miles is seen walking away from Officer Kingland's vehicle no later than 04:01:39. Officer Miles turns his camera's sound on 1 second later, and there is no conversation occurring as he walks away. At 04:01:40, Officer Kingland resumed writing the citations, and his camera shows a brief view of Officer Miles leaving to approach Riley's vehicle. Thus, while the exact length of their conversation (or what they were discussing) cannot be determined from the muted videos, it is equally clear from the evidence that the officers could not have spoken for any longer than 20 seconds and may have been as brief as 12 seconds. Indeed, Officer Miles was only on scene for 20 seconds before his sound commenced as he approached Riley's vehicle.

As the district court stated, the "videos speak for themselves." Our standard of review here requires us to accept the trial court's factual findings unless they are clearly erroneous. Determining that a court can "only guess" as to the timeline here was clearly erroneous. The video timestamps from each of the four officers are synchronized and can be confirmed. Based on a plain view of the video data, the longest estimate of the duration of the conversation cannot exceed 20 seconds. Accordingly, we must conclude the district court erred in finding that the duration of the conversation was too speculative or immeasurable.

**B. The deviations during Riley's traffic stop did not unlawfully prolong the seizure.**

Having determined from the video evidence that the two deviations took 8 and 20 seconds respectively, our next inquiry is whether the district court erred in concluding the total time of the traffic-stop deviations unlawfully prolonged Riley's seizure. The State argues this case has become "the height of pause-counting" and "inimical to the Fourth Amendment's reasonableness requirement," while Riley contends that Officer Kingland's unfounded deviations to investigate a drug crime "constituted a temporary abandonment of the stop." For the following reasons, we conclude that the unique circumstances of this case show the officers did not unlawfully prolong the stop or violate Riley's Fourth Amendment rights.

The Fourth Amendment of the U.S. Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "The stop of a vehicle by law enforcement constitutes a seizure of its occupants to which the Fourth Amendment applies." *State v. Linze*, 161 Idaho 605, 608, 389 P.3d 150, 153 (2016). Therefore, the length of such a seizure is governed by Fourth Amendment principles. *See id.* The tolerable duration of police inquiries during a traffic stop are "measured in reference to the stop's 'mission.' " *State v. Hale*, 168 Idaho 863, 867, 489 P.3d 450, 454 (2021) (citing *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). The traffic stop's "mission" includes, but is not limited to, addressing the traffic violation that precipitated the stop, determining whether to issue a traffic ticket, and making ordinary inquiries incident to the traffic stop, such as checking the driver's license and proof of insurance. *Id.* Courts also recognize that the inherent dangers of traffic stops permit an officer to "take 'certain negligibly burdensome precautions in order to complete his mission safely,' such as asking for the driver and passenger to exit the vehicle and conducting a criminal record check." *Id.* (quoting *Rodriguez*, 575 U.S. at 356).

The Fourth Amendment "tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention." *Rodriguez*, 575 U.S. at 354. Thus, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez*, 575 U.S. at 350. Law enforcement may "conduct certain unrelated checks during an otherwise lawful traffic stop, but they may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Hale,* 168 Idaho at 867–68, 489 P.3d at 454–55 (internal brackets and quotation marks omitted) (citing *Rodriguez*, 575 U.S. at 355). Law enforcement must also "be reasonably diligent in pursuing the mission of the [traffic] stop." *Hale*, 168 Idaho at 867, 489 P.3d at 454. "Authority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez*, 575 U.S. at 354. *See also Arizona v. Johnson*, 555 U.S. 323, 333 (2009). This rule, stemming from *Rodriguez*, "is both broad and inflexible," and "applies to all extensions of traffic stops including those that could reasonably be considered *de minimis*." *Linze*, 161 Idaho at 608, 389 P.3d at 153.

Unfortunately, neither the district court nor the Court of Appeals had access to our recent decision in *State v. Karst*, -- Idaho --, -- P.3d -- (2022). In *Karst*, we considered another dog sniff case in which we applied the U.S. Supreme Court's holding in *Rodriguez*, and overruled *State v.*

*Still*, 166 Idaho 351, 458 P.3d 220 (Ct. App. 2019). -- Idaho at --, -- P.3d at --. While we agree with the Court of Appeals' decision insofar as it concluded that the deviations did not prolong the stop, we disavow their approach taken under *Still* to determine whether there was "abandonment" of the stop. *State v. Riley*, No. 47372, 2021 WL 454250, at *5 (Idaho Ct. App. Feb. 9, 2021); *State v. Still*, 166 Idaho at 356, 458 P.3d at 225. Such conclusions are inimical to Fourth Amendment protections and contrary to current United States Supreme Court precedent.

As we explained in *Karst*, "the critical question according to *Rodriguez* is whether the dog sniff 'prolonged' or 'added time' to the overall duration of the traffic stop. . . . the officer does not have to 'abandon' the mission of the traffic stop for a Fourth Amendment violation to occur." *Karst*, -- Idaho at --, -- P.3d at --. "Merely 'detouring' . . . or 'deviating' . . . from that mission, even if the delay is de minimis, runs afoul of the protections of the Fourth Amendment." *Id.* In the context of dog sniffs, the courts have been consistent in permitting law enforcement to perform a dog sniff during the course of a lawful traffic stop only so long as it does not add time to the stop. *Id.*; *Illinois v. Caballes*, 543 U.S. 405, 410 (2005); *Linze*, 161 Idaho at 609 n.1, 389 P.3d at 154 n.1; *State v. McGraw*, 163 Idaho 736, 740, 418 P.3d 1245, 1249 (Ct. App. 2018). As we held in *State v. Pylican,* "[T]he key question is whether conducting the sniff prolongs the stop." 167 Idaho 745, 755, 477 P.3d 180, 190 (2020), *reh'g denied* (Oct. 1, 2020) (citation, brackets, and internal quotation marks omitted). For example, a dog sniff does not prolong the stop where one officer pursues the original objective of the stop while another officer conducts the dog sniff. *Id.*; *Linze*, 161 Idaho at 609 n.1, 389 P.3d at 154 n.1. However, a dog sniff unlawfully prolongs the stop where the officer detours from the stop to radio for a drug dog, even if it only extends the seizure by mere seconds. *Karst*, -- Idaho at --, -- P.3d at --. "The fact that [the defendant] was held for a *mere* nineteen seconds more than she should have been matters not for Fourth Amendment purposes—there is no exception for unjustified de minimis intrusions." *Id.* (citing *Rodriguez*, 575 U.S. at 356–57; *Linze*, 161 Idaho at 608, 389 P.3d at 153).

Here, Riley and the State agree that the initial traffic stop for her expired registration tags was lawful. The sole question on appeal focuses on whether Officer Kingland's deviations unlawfully prolonged the traffic stop where he lacked reasonable suspicion of a drug-related offense. In determining this issue, the district court applied the strictest application of *Linze* and *Rodriquez*: it measured the seconds between the dog alert and the completed traffic citation to determine whether the conversations unrelated to the traffic stop unlawfully extended it by even a

second. This is a narrow issue on appeal and a fact-intensive inquiry dependent on our conclusions from the video evidence in the record.

As the district court found, there were two deviating conversations that took place over the course of the traffic stop. The first was the 8 seconds of questioning between Officer Kingland and Riley. The second was a conversation between Officers Kingland and Miles lasting, at most, 20 seconds after the officers arriving on scene interrupted Officer Kingland from his work. It is also important to note that as in *Linze*, there was no additional delay caused by calling for a drug dog because Officer Miles, not Officer Kingland, requested the dog. Most importantly, the record is clear that the drug dog alerted a full 48 seconds *before* Officer Kingland completed writing Riley's traffic citation, an event that established reasonable suspicion of new unlawful activity. Thus, the 28 seconds of deviation did not actually lengthen the stop because even without the deviations, the drug dog would still have alerted 20 seconds before the citations were complete. Once the drug dog alerted, there was reasonable suspicion to extend the stop.

While we recognize that this discussion about detours and time stamps may be confusing, it can be clearly illustrated by graphically depicting the relevant timelines. *See* Figure 1, *infra*.



**Figure 1. Timelines of the stop.**

Based on this timeline, we cannot conclude that the two brief deviations actually extended the overall length of Riley's traffic stop. Although the conversations temporarily deviated from

10

the original purpose of the stop, these 28-second detours did not extend the duration of the stop beyond the time when reasonable suspicion of a new crime arose. Specifically, when the drug dog alerted on the vehicle, reasonable suspicion of a drug offense arose, thereby initiating a new timeline. Neither deviation, individually or combined, prolonged the actual length of Riley's stop because the dog alerted before the traffic stop was completed regardless of whether the detours occurred. Thus, our standard under *Rodriguez* remains satisfied—the deviations did not "prolong" or "add time" to the overall duration of the traffic stop. Therefore, we reverse the district court's order granting Riley's motion to suppress.

### IV. CONCLUSION

As stated in *Rodriguez*, the Fourth Amendment tolerates police activities that do not lengthen the duration of the detention. However, the district court's finding that "the court cannot determine if those [deviations] 'measurably extended' the duration of [the] seizure" was clearly erroneous. The record confirms that while there were two deviations from the initial course of this traffic stop, the combined deviation was insufficient to change the overall length of the stop beyond the time when the drug dog alerted on the vehicle. When this occurred, it gave rise to a reasonable suspicion of drug activity and allowed officers to continue to investigate. Accordingly, we reverse the district court's order granting Riley's motion to suppress and remand the case for further proceedings.

Chief Justice BEVAN, Justice BRODY and Justice Pro Tem BURDICK **CONCUR.**

STEGNER, J., concurring in the result.

I concur in the result reached by the majority that the district court erred in granting Riley's motion to suppress based on my understanding of the jurisprudence regarding the Fourth Amendment to the U.S. constitution. I write separately to note that there is a corollary prohibition against unreasonable searches and seizures found in Idaho's constitution: article I, section 17. Because of my disagreement with the way the United States Supreme Court has concluded that a dog sniff search is not in fact a search, I think Idaho's constitution affords greater protection to her citizens than does the U.S. constitution. "It is well-established that the federal constitution merely provides a floor for protections guaranteed to individuals; state constitutions, however, can and often do provide greater protections against government intrusion." *State v. Randall*, 169 Idaho

358, 370, 496 P.3d 844, 856 (2021) (Stegner, J., concurring); *see also State v. Howard*, 169 Idaho 379, 386, 496 P.3d 865, 872 (2021) (Stegner, J., concurring).

As I discussed at length in *Randall*, I would hold that a dog sniff around the exterior of a vehicle is a search pursuant to article I, section 17 even though it may not be considered a search under the Fourth Amendment to the U.S. constitution. *Randall*, 169 Idaho at 370, 496 P.3d at 856 (Stegner, J., concurring). I would also conclude that in order to conduct a dog sniff search, Idaho's constitution requires something more than a routine traffic stop. I think there must be at least reasonable suspicion—if not probable cause—to support such a search. Had such an argument been made in this case, I would vote to suppress the evidence obtained because there is nothing to suggest the police in this case had any reason to suspect Riley was in possession of or transporting illegal drugs. However, because Riley has not argued that Idaho's constitution provides greater protection than that afforded by the United States constitution, I am constrained to agree with the majority. I await the case in which Idaho's constitution forms the basis for the challenge to a search conducted by a drug dog. Only then can it be determined if Idaho's constitution precludes a search via a drug dog when there is no showing that criminal activity (other than the unlawful operation of a motor vehicle) is afoot.