# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48117

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

JASON EDWARD CLARK,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed: April 17, 2023

Melanie Gagnepain, Clerk

**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY**

---

Appeal from the District Court of the Third Judicial District, State of Idaho, Washington County. Hon. Susan E. Wiebe, District Judge.

Judgment of conviction for possession of a controlled substance, <u>vacated</u>; and <u>case remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Jason Edward Clark appeals from the judgment of conviction for possession of a controlled substance in violation of Idaho Code § 37-2732(c)(1). Clark argues the district court erred in denying his motion to suppress. We reverse the denial of the suppression motion, vacate Clark's conviction, and remand this case for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2019, Officer Stratton initiated a traffic stop of a vehicle after observing it make a U-turn in the middle of the highway without headlights or brake lights. Officer Stratton contacted the vehicle's driver, Clark; activated the body camera; and asked for Clark's identification.

1

As Clark was getting his identification, Officer Stratton observed a second identification card in Clark's wallet and asked for it too. As Clark was getting the second identification card, Officer Stratton questioned Clark about what was in a case in his vehicle. Clark told Officer Stratton the case contained sunglasses. Officer Stratton responded it did not look like a sunglasses case and asked to look inside, but Clark declined to open the case. Officer Stratton then questioned Clark about the discrepancy in the length of hair between the two identification photographs, and Clark explained he sometimes grows his hair out.

After obtaining Clark's documents, Officer Stratton spoke about the sunglasses case to Sergeant Singleton, who was also on the scene as a cover officer and an on-scene supervisor. Officer Stratton told Sergeant Singleton that Officer Stratton asked Clark what was in the case; he would not open it; and "there's drugs in there." Both Officer Stratton and Sergeant Singleton returned to Officer Stratton's patrol vehicle, at which time Officer Stratton contacted dispatch to perform a driver's check on Clark.

While in the patrol vehicle, Officer Stratton continued to discuss with Sergeant Singleton Officer Stratton's belief the sunglasses case contained drugs, his desire to search the case, and whether they should call a drug dog to the scene. Thereafter, Officer Stratton's body camera stops recording. The camera begins recording again approximately three and a half minutes later and as Officer Stratton approaches Clark to inform him that his driver's license is expired.

Officer Stratton then returned to his patrol vehicle and discussed with Sergeant Singleton the discrepancies between Clark's two identifications, including the weight discrepancies[1] and that the photographs appeared to depict two different people. Based on the discrepancies, Officer Stratton contacted dispatch and attempted to obtain a recent booking photograph of Clark. Officer Stratton continued investigating the discrepancies between Clark's identifications until the drug dog arrived.[2] Thereafter, the dog alerted on Clark's vehicle, and methamphetamine and drug paraphernalia were discovered in the vehicle.

---

[1] One identification card indicated Clark weighed 275 pounds and another issued six months later indicated he weighed 175 pounds. In support of his suppression motion, Clark filed a declaration stating that Officer Stratton never questioned Clark about this weight discrepancy and that he believed the difference was a clerical error.

[2] The district court found the drug dog took twenty minutes to arrive on the scene. Both parties dispute this finding, however, and agree the videos from the officers' body cameras show

The State charged Clark with possession of a controlled substance and drug paraphernalia. Clark filed a motion to suppress, arguing the State could not establish reasonable suspicion to justify an extension of the traffic stop and seeking to suppress "all evidence, oral or tangible, obtained from [Clark]." During the suppression hearing, both Officer Stratton and Sergeant Singleton testified, and the videos from their body cameras were admitted into evidence. Importantly for purposes of this appeal, Officer Stratton testified about contacting the drug-dog handler during the traffic stop, stating "I called [the drug-dog handler] on my cell phone as he was off, and he was at home." Likewise, Sergeant Singleton testified Officer Stratton called a drug dog to the scene.

After the hearing, the district court issued a written decision denying Clark's suppression motion. The court found that, Officer Stratton "used his cell phone to call for the [drug dog]"; "this call does not appear on the video"; and "there is a break in Officer Stratton's body camera video after about 5 minutes of recording." Further, the court found that, although "it is unclear exactly when Officer Stratton called for a [drug dog], it likely occurred approximately 5 minutes into the stop, after the second discussion between the officers of suspected narcotics." As relevant to this appeal, the court concluded that "the inquiry into the availability of a [drug dog] did not constitute the abandonment of the traffic stop, and was therefore lawful." In support, the court quoted the rule in *State v. Still*, 166 Idaho 351, 356, 458 P.3d 220, 225 (Ct. App. 2019), *overruled by State v. Karst*, 170 Idaho 219, 220, 509 P.3d 1148, 1149 (2022), that "a radio call to inquire if a drug dog is available does not constitute [an] abandonment" of the traffic stop's mission under *Rodriguez v. United States*, 575 U.S. 348 (2015).

After the district court denied his suppression motion, Clark pled guilty to possession of a controlled substance and reserved his right to appeal the denial. Clark timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a

---

approximately thirteen minutes passed from the time Officer Stratton turned off his body camera and called for the drug dog until it arrived on the scene.

3

suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Clark challenges the district court's order denying his suppression motion, arguing "Officer Stratton unlawfully extended the traffic stop to request a drug-dog unit without reasonable suspicion to justify the extension." The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998).

The tolerable duration of an officer's inquiries during a traffic stop is measured in reference to the stop's mission. *State v. Riley*, 170 Idaho 572, 578, 514 P.3d 982, 988 (2022). That mission includes, without limitation, addressing the traffic violation; determining whether to issue a traffic citation; and making ordinary inquiries incident to the stop, such as checking the driver's license and proof of insurance. *Id.* The officer's authority for the seizure ends when the officer has completed or reasonably should have completed the tasks related to the stop's mission. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

An officer may conduct certain unrelated checks during a traffic stop without independent reasonable suspicion, so long as the check does not prolong the stop. *Riley*, 170 Idaho at 578, 514 P.3d at 988; *see also Rodriguez*, 575 U.S. at 356-58. Although a drug-dog sniff is not part of the stop's mission, such a sniff is constitutionally permissible if executed in a reasonable manner that does not infringe on a constitutionally protected privacy interest, *Caballes*, 543 U.S. at 409-10, and does not prolong the stop. *Riley*, 170 Idaho at 578, 514 P.3d at 988.

The critical question in determining whether a drug-dog sniff unconstitutionally extended a traffic stop is whether the sniff "prolonged or added time to the overall duration of the traffic

stop." *Id.* (internal quotation marks omitted)*; Karst*, 170 Idaho at 227, 509 P.3d at 1156. "[A] dog sniff does not prolong the stop where one officer pursues the original objective of the stop while another officer conducts the dog sniff." *Riley*, 170 Idaho at 579, 514 P.3d at 989. If, however, an officer without independent reasonable suspicion deviates or detours from the stop's mission for a sniff, he may unconstitutionally delay the stop. *Id.* For example, "a dog sniff unlawfully prolongs the stop where the officer detours from the stop to radio for a drug dog, even if it only extends the seizure by mere seconds." *Id.*; *Karst*, 170 Idaho at 227, 509 P.3d at 1156 (concluding nineteen-second call to request drug dog unconstitutionally extended traffic stop's duration).

In this case, the district court ruled that Officer Stratton did not unlawfully extend the traffic stop's duration because "the inquiry into the availability of a [drug dog] did not constitute the abandonment of the traffic stop, and was therefore lawful." In support, the court relied on the ruling in *Still* that "a radio call to inquire if a drug dog is available does not constitute [an] abandonment" of the stop's mission. *Still*, 166 Idaho at 356, 458 P.3d at 225. As Clark notes, however, the Idaho Supreme Court overruled *Still* after the district court in this case denied Clark's suppression motion in reliance on *Still*. *Karst*, 170 Idaho at 227, 509 P.3d at 1156.

In *Karst*, Sergeant Hyle stopped a vehicle for minor traffic violations. *Id.* at 221, 509 P.3d at 1150. Karst, a passenger in the vehicle, was not wearing her seatbelt. *Id.* After Sergeant Hyle requested Karst's and the driver's information and as Sergeant Hyle was returning to his patrol vehicle, "he stopped and radioed dispatch to request that a drug-dog unit respond to the scene." *Id.* He testified that "he requested a drug-dog unit because the truck was coming from a suspected drug location and the [driver's] name had come up in connection with drug investigations." *Id.* "The time it took to request the drug-dog unit was about nineteen seconds." *Id.* Thereafter, Sergeant Hyle returned to his vehicle and conducted activities related to the traffic stop's mission, including gathering information from dispatch, inquiring about insurance and a suspended driver's license, and writing citations. *Id.* During this time, a drug dog arrived at the scene, conducted a sniff around the vehicle, and alerted on the vehicle as Sergeant Hyle exited his patrol vehicle to serve the citations. *Id.*

On appeal of the denial of Karst's suppression motion, the Idaho Supreme Court overruled *Still* concluding it "improperly required 'abandonment' of the traffic mission for a stop to become unlawfully extended." *Id.* at 225, 509 P.3d at 1154. The Court ruled:

5

[T]he proper focus . . . is whether the dog sniff "prolonged" or "added time to" the traffic stop. Whether the officer "abandoned" the traffic stop is not determinative. [T]here is no de minimis intrusion justification for prolonging the traffic stop.

*Id.* at 223, 509 P.3d at 1152.

Clark asserts *Karst* controls in this case, and he focuses his analysis on the delay Officer Stratton caused when he deviated from the traffic stop's mission to call for a drug dog. We agree that under *Karst*, Officer Stratton unlawfully extended the traffic stop by taking the time necessary to call for a drug dog. At the suppression hearing, Officer Stratton and Sergeant Singleton both testified that Officer Stratton called for a drug dog during the stop. This call was a deviation from the stop's mission and was not supported by reasonable suspicion.

Although the record is unclear how long Officer Stratton's call to request a drug dog took, this lack of clarity does not foreclose the conclusion that Officer Stratton unlawfully extended the traffic stop. As both officers testified and the district court found, Officer Stratton called for a drug dog at some point during the traffic stop. The only portion of the traffic stop not recorded on the officers' body camera videos is approximately five minutes after the stop commenced and after the officers' second discussion about whether the sunglasses case contained drugs. At that time, Officer Stratton turned his body camera off. As the court's findings indicate, Officer Stratton's call to the drug-dog handler "likely occurred approximately 5 minutes into the stop" when Officer Stratton turned off his body camera video.[3] Officer Stratton's call undoubtedly took at least "mere seconds." *See Riley*, 170 Idaho at 579, 514 P.3d at 989 ("[A] dog sniff unlawfully prolongs the stop to radio for a drug dog, even if it only extends the seizure by mere seconds."). Accordingly, Officer Stratton unlawfully delayed the traffic stop by deviating from the stop's mission to call for a drug dog.

The State acknowledges that "Officer Stratton did not have reasonable suspicion to detain Clark based on [the officer's] personal belief that Clark possessed drugs" and that under *Karst* "an officer's call for a [drug dog]--without more--would illegally extend this stop." The State asserts, however, that Officer Stratton did not unlawfully extend the traffic stop because his "call for a drug dog did not add time to the traffic stop" but rather "was contemporaneous with his

---

[3]     The State appears to acknowledge on appeal that Officer Stratton called for a drug dog when he turned off his body camera, stating "the body-cam videos show that the earliest Officer Stratton called for a drug-dog was 1:39:00 (when [his video] stopped)."

investigation into Clark's inconsistent [identifications]." *See* I.C. § 18-5413(2) (criminalizing giving false information to law enforcement); I.C. § 49-331 (criminalizing use of fraudulent driver's license).

An officer may develop reasonable suspicion during a traffic stop of other criminal activity and investigate that activity based on that new reasonable suspicion. *State v. Linze*, 161 Idaho 605, 609, 389 P.3d 150, 154 (2016); *State v. Renteria*, 163 Idaho 545, 550, 415 P.3d 954, 959 (Ct. App. 2018). The record in this case, however, does not support the State's assertion that Officer Stratton was pursuing an investigation into a false identification contemporaneously with calling the drug-dog handler during the traffic stop. The record is silent as to what Officer Stratton was doing after he turned off his body camera, other than calling the drug-dog handler. Further, the State acknowledges:

> The record is silent as to whether the officer wrote Clark a citation for driving with an expired license (or any other offense/infraction) contemporaneously with his call for a drug-dog, or if he was doing some other task within the purpose of the traffic stop at the time.

This silence, however, does not inure to the State's benefit. Rather, the State had the burden to show that Officer Stratton's call for a drug dog did not unlawfully extend the traffic stop because he was contemporaneously conducting an alternative investigation for which he had reasonable suspicion when he made the call. *See State v. Marshall*, 149 Idaho 725, 727, 239 P.3d 1286, 1288 (Ct. App. 2008) (noting State has burden to prove applicability of exception to warrant requirement). Having failed to meet this burden, the State failed to establish that Officer Stratton's call for a drug dog did not unlawfully extend the stop.

We decline to remand the case, as the State requests, for further factual findings regarding whether Officer Stratton was simultaneously performing tasks in furtherance of his investigation into a false identification when he was calling for a drug dog. At the suppression hearing, the State argued Officer Stratton had reasonable suspicion to investigate a false identification but failed to present any facts that he was actually investigating either the traffic violations or the false identifications after he turned his body camera off. The State offers no explanation for failing to present such evidence in support of its assertion that Officer Stratton was pursuing an alternate investigation for which he had reasonable suspicion when he called the drug-dog handler during the traffic stop. Although the Idaho Supreme Court overruled *Still* after the district court ruled on Clark's suppression motion, the rule of law on which the State relies--i.e., that an officer may

develop reasonable suspicion during a traffic stop of other criminal activity and investigate that activity based on that new reasonable suspicion--was well established before Clark filed his suppression motion. *See Rodriguez,* 575 U.S. at 354-55 (noting officer may investigate another crime during traffic stop if he acquires reasonable suspicion of that crime); *Linze*, 161 Idaho at 609, 389 P.3d at 154 (noting "new reasonable suspicion or probable cause" justifies "seizure's new purpose"); *Renteria*, 163 Idaho at 550, 415 P.3d at 959 (noting "Subsequent observations and events can give rise to legitimate reasons for investigation of criminality differing from that which initially prompted the stop.").

This Court exercises free review over the district court's determination whether constitutional requirements are satisfied under the facts found. *Karst*, 170 Idaho at 222, 509 P.3d at 1151. Substantial evidence supports the district court's factual findings. Based on those findings, we hold Officer Stratton unlawfully extended the traffic stop under *Karst* by calling to request a drug dog without reasonable suspicion of drug activity.

## IV.
## CONCLUSION

We reverse the district court's order denying Clark's suppression, vacate the judgment of conviction, and remand this case for further proceedings consistent with this opinion.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.